STATE, EX REL. HARLOW GOFF, v. COUNTY BOARD OF DODGE COUNTY ET AL.

1. **Taxes:** EQUALIZATION OF ASSESSMENT. To justify the board of equalization in increasing the assessment of an individual, a complaint must be made. Such complaint, if oral, must be reduced to writing and spread upon the records as the foundation of its action, and a mere recital that oral complaint was made to such board, without setting out the complaint, is not sufficient.

2. ———: ———: POWERS OF BOARD. Upon a complaint being filed, the board of equalization, in reviewing the assessment of an individual, has appellate, special, and judicial powers, and until evidence is received by it in support of the complaint the tax-payer may rely upon the valuation made by the assessor.

3. ———: ———: MANDAMUS. Where a board had made up its record to show inferentially that evidence had been heard in support of their action in increasing the valuation of an individual assessment, where in fact no such evidence had been received, *Held*, That the board will be required to correct its record so as to conform to the fact.

ORIGINAL application for mandamus.

*W. H. Munger,* for relator.

*J. E. Frick,* for respondents.

MAXWELL, CH. J.

This is an application for a peremptory writ of mandamus to compel the defendant to correct the records of the board of county commissioners of Dodge county, sitting as a board of equalization, so as to conform to the facts.

The cause is submitted to the court upon the following agreed statement of facts:

"1st. The relator, on the 1st day of April, 1886, was the owner of the following real estate, to-wit: Part of the south-east quarter of section 10, township 17, range 8, in Dodge county, Nebraska, containing eight acres; which real estate was duly assessed in the name of the relator and placed on the assessment roll in his name for the year 1886.

"2d. Said county commissioners, defendants, were duly organized as a board of equalization, and were on the — day of June, 1886, in session as such board as provided by law.

"3d. That at such time oral complaint was made to such board that the property of various persons, and among others the real estate of the relator, was assessed too low; whereupon the board caused a notice to be issued notifying each of said persons of said complaint; that said notice was duly served on the relator, requiring him to appear before said board on the day named in said notice at the office of the county clerk of said Dodge county, and show cause, if any he have, why his assessment on the real estate in question should not be raised as prayed for.

"4th. That on the — day of June, 1886, while said board was still in session as a board of equalization, and after the day fixed in the notice served on the relator, the board made the following order, to-wit:

"'The board having inquired into and examined the various cases complained of, and heard the parties in their own behalf, and upon proper consideration of the same, made the following order, to-wit: That part of the southeast quarter of section 10, township 17, range 8, Harlow Goff owner, assessed at $50, be raised to $240.'

"5th. That all the real estate in the vicinity of relator's was raised in the same proportion as relator's, and all orders with reference to the same were made the same in manner and form as that relative to relator's real estate.

"6th. That in raising the assessment of relator's real estate as aforesaid, said board did not swear any witnesses nor hear any sworn testimony of any kind or nature; nor documentary or record evidence, except as hereinafter stated.

"7th. That two of the members of said board, prior to said time, were appointed by the county judge of said Dodge county, and were acting as members of a commission to appraise the value of real estate in condemnation proceedings for railroad purposes, as provided by law; and that real estate in the immediate vicinity of relator's real estate in question had been viewed by the members aforesaid for the purpose of appraisement, and had been appraised by them, and they were well acquainted with the real estate in question and knew the value thereof at the time they raised said assessment as aforesaid.

"8th. That there was also on file in the office of the county clerk of said Dodge county, a deed from relator to the F. E. and M. V. R. R. Co., conveying a portion of the real estate in question to said R. R. Co. for right of way purposes, which deed had been placed on file and the conveyance made immediately preceding the raising of said assessment, and from which deed the apparent value of re-

lator's real estate was made to appear, it being personally believed by the board at that time that there was no appreciable damage to relator's real estate by the taking of said right of way, except the market value of the land actually taken for such right of way.

"9th. That the relator offered no evidence at the time and place fixed in said notice, nor did he request the board to swear or examine any witnesses; nor did he request or demand at that time any record to be made or kept by said board, and the board did not keep any record of any evidence or hear any witnesses or have any evidence except as hereinbefore stated in paragraphs 7 and 8.

"10th. That relator has made a demand upon the defendants to amend their said record so as to show the fact as to whether they heard any evidence in the matter of raising said assessment, which they have refused to do."

The said parties from the foregoing facts submit for the judgment of the court the following; 1st. Had the said board of county commissioners authority to raise said assessment without legal evidence before them as to the value of said property?.

2d. Was the action of said board of county commissioners, in raising the assessment of relator's said property, in manner as above stated, valid?

The statute provides for the election of an assessor in each precinct or township, and requires him to give bond in the sum of $500, conditioned for the faithful discharge of all duties required by law, which bond is for the use of any persons injured by a breach of its conditions. Sec. 12, Chap. 10, Comp. Stat. Among the duties required of such assessor are the following: "Assessors shall, between the first day of April and the first day of June of each year, *actually view and determine*, as nearly as practicable, the value of each tract or lot of land listed for taxation as provided by this act, and set down in proper columns, in the book furnished him, the value of each tract or lot im-

proved, the value of each tract or lot not improved, and the total value. * * * " Comp. Stat., Chap. 77, Sec. 52.

Sec. 54 requires the assessor to assess the value of all the personal property, in his territory, and to obtain a sworn statement of such property from each person listing the same.

Sec. 56 authorizes the assessor to compel the attendance of witnesses, and to examine on oath any person whom he may suppose to have knowledge of the amount or value of the personal property of any person refusing to list his property.

By sec. 60 the assessor is required, when requested, to deliver to any person assessed a copy of the statement of his property, showing the valuations of the assessor of the property so listed.

It will thus be seen that the assessor is to fix the actual assessable value of the taxable property named in his territory. In fixing such values, he acts judicially. Cooley on Taxation, p. 550, *et seq.*, and cases cited. His assessment, therefore, becomes final—as much so as a judgment of a court upon a subject where it has jurisdiction, unless reviewed in the mode provided by law. The assessor is required to ascertain the value of each tract of land assessed by him, not by hearsay, not by calling witnesses, but by actually viewing the land itself. The evident object of the statute is to enable the assessor to fix the true value of the land, and in the absence of any proof upon the subject the presumption is that he has done his duty.

Section 70 provides that the county commissioners shall act as a board of equalization, and, commencing on the first Tuesday in June, annually, after the return of the assessment books, hold a session of not less than three nor more than twenty days for that purpose. And that " on the application of any person considering himself aggrieved, or who shall complain that the property of another is assessed too low, they shall review the assessment and correct the

same as shall appear to be just. No complaint that another is assessed too low shall be acted upon until the person so assessed, or his agent, shall be notified of such complaint, if a resident of the county; *Provided,* That in counties under township organization, that such application shall have been made to the town board of equalization, and been rejected by them."

It will be seen that relief may be granted in two classes of cases: First, where the complainant supposes himself to be aggrieved by his own assessment; or, second, by the low assessment of another. While the word aggrieved does not occur in the second provision above quoted, it is clearly implied.

Where one has no property subject to taxation, his burdens cannot be increased by too low a valuation of the property of others. In other words, the complainant must be aggrieved by the low assessment. This principle runs through the entire body of the law, and no court would sustain a mere volunteer, having no interest in the subject in controversy, in prosecuting an action.

In the case at bar it is agreed that "oral complaint was made" to the defendants that the property of the relator was assessed too low; by whom made we are not informed; it may have been by a resident of some other state casually passing through said county and having no interest in the matter in controversy, or by a child of tender years; the name even is not given.

Webster defines the word *complaint* to mean, in law, "A form of legal process which consists of a formal allegation or charge against a party, made or presented to the appropriate court or officer, as for a wrong done or a crime committed; in the latter case generally under oath." Now supposing the alleged oral complaint to have been made by a proper party, the substance of it must be reduced to writing as a basis for the action of defendants. In the record presented to us there is no complaint, either formal

or informal, and the record of the defendants fails to show the existence of such an instrument. We have their naked assertion that such oral complaint was made. This, however, falls far short of showing the existence of a complaint. Even if the complaint were in writing the complainant might become convinced that he was mistaken before it was acted upon, and withdraw such complaint, in which case there would be left no basis for a board of equalization to act on.

The question here presented was before the supreme court of California, *People v. Reynolds,* wherein the court say (28 Cal., p. 111), " the twenty-third section of the revenue act (Stat. 1861, p. 427) confers on the board of equalization the power to determine all complaints made in regard to the alleged value of any property, and the power to change and correct any valuation, either by adding thereto or deducting therefrom, if they deem the sum fixed in the assessment roll too small or too great. * * * In matters relating to the assessment of property the board of equalization may hear and determine complaints respecting the same, and may correct errors in the assessment roll submitted to them by diminishing or increasing the valuation fixed by the assessor upon the property therein described, but they cannot increase the assessed value without complaint, nor then until the party interested has had reasonable notice of the day when they will act in the case.

" When the party interested appears in answer to the notice or summons, he is entitled to be informed of the matters which he may be required to meet, and until a case be established authorizing an addition to be made to the assessed valuation of the property, he will have nothing to rebut, but may rest recurely upon the assessed valuation. The board have no more right to add to the assessed valuation of property without evidence authorizing them to do so than a court or jury have to find facts and determine the rights of litigants without evidence. If boards of

equalization may arbitrarily, and of their own mere ca-
price, increase the assessed valuation of property, then they
possess a power without prescribed limits, which may be
used for the purposes of the grossest oppression and in-
justice."

This doctrine was affirmed by the court in *People v.
Flint*, 39 Cal., 670, and *People v. Goldtree*, 44 Cal., 323,
where it is said, "in order to give the board of equaliza-
tion jurisdiction to increase the valuation of property be-
yond the amount at which it has been assessed, the filing
of a complaint is necessary." And also, "where the board
of equalization makes an order increasing an assessment,
without a complaint having been filed, and the party as-
sessed appears and moves to set aside the order, such ap-
pearance does not confer jurisdiction by relation, and a
refusal to set aside the order does not make it valid."

No cases have been cited to the contrary, and the writer,
after a diligent examination, has been unable to find any.
The proceedings of a board of equalization necessarily must
be made a matter of record. Such proceedings form the
basis for the levy and collection of taxes and for divesting
the title of the land owner in case of a sale of the real
estate for the payment of such taxes. That a tribunal
possessing the power to increase such taxes must have juris-
diction will be conceded without the citation of author-
ities.

Chapter 23 of Comp. Stat., relating to Decedents, au-
thorizes a judge of the district court in certain cases to
license a sale of the real estate of minors.

Section 47 provides that, "in order to obtain a license
for such sale, the guardian shall present to the district court
of the county in which he was appointed guardian, a peti-
tion therefor, setting forth" certain facts. There is no ex-
press provision that this petition shall be in writing, and
even the requirement that it shall be verified might be ful-
filled if defendant's position is correct, by permitting the

petitioner to swear to his oral statement of facts. Yet the petition forms the basis on which the jurisdiction of the court depends, and necessarily must be in writing and made part of the records of the case. Many other cases of similar import might be cited, but it is unnecessary.

. The board of equalization is simply what its name imports, a board for the equalization of values in certain cases. It possesses no powers save those conferred by statute, and its jurisdiction must appear on the face of the record of its proceedings. As such jurisdiction fails to appear in this case, its action was unauthorized.

2d. The statute confers upon the board of equalization general powers to " ascertain whether the valuation in one township, precinct, or district bear just relation to all the townships, precincts, or districts in the county, and may increase or diminish the aggregate valuation in any township, precinct, or district by adding or deducting such sum upon the hundred as may be necessary to produce a just relation between all the valuations of property in the county, but shall in no instance reduce the aggregate valuation of all the townships, precincts, or district below the aggregate valuation thereof as made by the assessors, neither shall it increase the aggregate valuation of all the townships, precincts, or districts, except in such an amount as may be actually necessary and incidental to a proper and just equalization."

It is simply to *equalize*, and any increase, except such as may be actually necessary and incidental, would be erroneous. *Suydam v. Merrick County*, 19 Neb., 155. Thus, in the case cited, the board added to the assessed valuation of Merrick county the sum of $114,382.43, and this action was held to be in excess of the powers of the board, and void. In reviewing the assessment of individuals the powers of the board are not original but appellate and special, and depend upon condition that complaint first be made; the board then acts upon the complaint, and hears

evidence to determine whether it be well founded. For the purpose named it is a judicial tribunal, and as far as possible must be governed by the rules relating to evidence.

In no tribunal, so far as the writer is aware, can a case be decided upon the private information of the court, judge, juror, referee, or other officer.

In every case such testimony must be given under oath, in open court, subject to cross-examination and the other incidents to which the testimony of witnesses may be subjected. If this were not so, neither the person, liberty, or property of any citizen would be secure, as it would be impossible to review such action.

Section 13 of the Bill of Rights provides that " all courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law, and justice administered without denial or delay."

Section 24, Id., declares that " the right to be heard in all civil cases in the court of last resort, by appeal, error, or otherwise, shall not be denied."

In *People v. Reynolds*, 28 Cal., p. 111, it was held that the tax payer might " rest securely upon the assessed valuation until a case be established authorizing an addition to be made" thereto. This rule is clearly applicable in this state. There is no claim that the defendants knew the value of real estate generally in the precinct where the land in question is situated. The inference to be gathered from the agreed statement of facts is that they did not possess such general knowledge. So far as appears, all their information in the premises seems to have been derived from two sources; first, from two of the defendants having been members of a commission to condemn real estate for right of way for a railroad, and second, from a certain deed of the relator for right of way.

There is no claim that they knew the relative value of real estate in the precinct, or the value of this property as

compared with the value of other property in the precinct, yet without such information they nearly quintuple the assessed valuation of the relator's real estate, and have made up their record to show inferentially that they received evidence to justify such increase, when, as agreed in the statement of facts submitted, they received none, thereby precluding the relator from having the action of the board reviewed on error. This they had no authority to do, and upon demand being made they should have corrected their record to conform to the facts.

A peremptory writ will therefore issue as prayed.

WRIT ALLOWED.

THE other judges concur.