GEORGE L. HAECKE ET AL., APPELLANTS, V. EASTERN SARPY COUNTY DRAINAGE DISTRICT, APPELLEE.

4 N. W. (2d) 744

FILED JUNE 26, 1942. No. 31318.

*John C. Barrett,* for appellants.

*William R. Patrick, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This action involves an appeal from an affirmation of the apportionment of benefits to certain lands made by the Eastern Sarpy County Drainage District, which herein will be called the district. The appellants are the landowners and will herein be called the landowners.

The proper organization of the district under the provisions of chapter 31, art. 5, Comp. St. 1929, is not questioned. It appears that in 1909 the Papillion Drainage District was organized; did certain work in improving the channel of Papillion creek in a part of its channel and was then dissolved. The district involved in this litigation was organized in 1939 for the purpose of repairing a part of the work done by the Papillion Drainage District and improving the creek from its mouth on that part not formerly included in the Papillion Drainage District improvement.

Subsequent to its organization the board of directors of the district met on April 9, 1940, and adopted the following plans for work to be done in said district:

"The levees along the main ditch, where insufficient, damaged or destroyed by floods, to be repaired as soon as pos-

sible after the district acquires a dragline and necessary operators.

"Thereafter the construction, repair and maintenance of levees, removal of obstructions from ditches and creek, and improvement of out-let to the Missouri river, as may be necessary, to be carried on under the personal supervision of the board of directors, to the extent that funds become legally available for such purposes, but the cost of such improvement and maintenance work at no time to exceed the benefits received by property within said district, by reason of such work."

Thereafter the district purchased machinery and proceeded to do considerable work.

October 11, 1940, the board designated October 26, 1940, as the date for a meeting "for the purpose of hearing all parties interested in the apportionment of benefits by reason of the improvement to lands," etc. Notice was published, the meeting held and "all parties appearing" were heard. The board of the district then apportioned benefits and levied an assessment for money required "to meet the cost and expense of carrying on the contemplated repair and improvement work to dikes, levees and ditches therein, purchase of equipment, payment of interest, wages and incidental expenses, during the ensuing fiscal year."

Thereafter the landowners filed written complaints with the county clerk "against certain benefits fixed and determined" by the district; objected "to any assessments that may be levied against any or all" of their lands for the reason that they had at their own expense protected their lands by dikes and embankments, that "none of the work done by or contemplated to be done" by the district would be of benefit to them and therefore objected to "any assessments or benefits" being made against their lands.

Transcripts were then filed in the district court. Demurrers were filed by the district and overruled by the court. March 10, 1941, the landowners moved that the assessments "be declared void and further that it be declared that complainants received no benefits under and by virtue of said assessment for the following reasons.

"1. That said drainage district has failed to file a petition as required by law in this proceeding. 2. That the directors of said drainage district have not complied with the law as shown by the Compiled Statutes of the state of Nebraska for 1929 in the following particulars: (a) That no plan of the proposed improvement has been made. (b) That no engineer has been employed and made findings as required by law. (c) That no estimated costs of any proposed improvement has been made by the board of directors as required by law. (d) That the detailed plan with engineer's reports and a cost of the improvement is mandatory to substantiate any assessment."

A further reason given was that the district had not complied with several provisions of the statute. A ruling does not appear to have been made upon this motion.

On the same day the court began hearings on the questions involved.

At the close of the case the trial court took the matter under advisement and later entered its decree finding the lands benefited by "the improvement contemplated by the plan adopted" by the district, but reducing the units of benefit per acre. From this decree the landowners appeal and the district cross-appeals.

Section 31-511, Comp. St. 1929, provides: "The board of directors having first, with the aid of such engineer, surveyor and other assistants as they may have chosen, made detailed plans of the public work to be done in accordance with the first section of this article, shall apportion the benefits thereof accruing to the several tracts of land within the district which will be benefited thereby, on a system of units."

The landowners present generally two propositions. First, the failure of the district to have "made detailed plans of the public work to be done" before the apportionment of benefits. Second, the failure of the district to establish that the land would be benefited by the improvement. To these the district advances the contention that the question of "detailed plans" was not an issue, that the district court

was without jurisdiction to decide it and that the benefits apportioned were proved. In support of its cross-appeal the district contends that its demurrers should have been sustained and that the trial court erred in reducing the units of benefits apportioned to the appealing landowners.

The first question to be determined is whether or not the statutory requirement of the making of "detailed plans of the public work to be done" is a condition precedent to any valid apportionment of benefits. This court has long been committed to the rule: "Statutory provisions authorizing assessments of special taxes against property benefited by public improvements are to be strictly construed, and it must affirmatively appear that the taxing authorities have taken all steps which the law makes jurisdictional; the failure of the record to show such proceedings will not be aided by presumptions." *Morse v. City of Omaha,* 67 Neb. 426, 93 N. W. 734.

This court in considering the statute here involved has said: "While the statute does not provide for notice before the directors shall adopt a system of drainage, the property owner is given notice of the time when benefits will be apportioned to his land. At that time the engineer *must have prepared a detailed plan,* and, if the *expense* of carrying that scheme into execution will exceed the benefits that will accrue to the land within the district, a hearing upon the objections will develop that fact and the plan will not be adopted." (Emphasis supplied.) *O'Brien v. Schneider,* 88 Neb. 479, 129 N. W. 1002.

Section 31-512, Comp. St. 1929, provides that objections may be made to the apportionment of benefits at the hearing before the board of directors. Upon what intelligent basis may a landowner object if he does not have available for examination those detailed plans? By what yardstick may the board determine a "fair and just" apportionment of benefits if it does not have a detailed plan by which those benefits are to be measured? Section 31-513, Comp. St. 1929, provides that upon appeal the district court shall hear and determine such objections as a case in equity. Again,

by what yardstick may the district court measure such benefits in the absence of the "detailed plan" which the statute contemplates?

Section 31-514, Comp. St. 1929, provides that, *"if there is such a change of plans* or enlargement or extension of the work, as to make a different apportionment necessary, *then"* the board may make a new apportionment as provided in the section. Section 31-517, Comp. St. 1929, provides for the issuance of bonds under certain conditions, "not, however, exceeding the amount that the *engineer* of the district shall certify as being required." Section 31-522, Comp. St. 1929, with reference to borrowing money on the district's note, provides that the amount shall not exceed "the cost of the drainage improvement as estimated by the engineer." Section 31-526, Comp. St. 1929, provides: "The board of directors shall employ such engineer, surveyor and other help as to them may be deemed necessary," etc. Without determining the applicability of section 31-550, Comp. St. 1929, to the organization of the district, it is noted that that section, adopted subsequent to the original act, provides that the board of directors, "having first adopted detailed plans and specifications of the work proposed to be done, and made an estimate of the total cost of such contemplated improvement, and filed such plans, specifications and estimated cost," shall proceed as therein directed.

It is patent from a reading of the entire act, as it existed when the district was organized, that the legislature intended that the first step in the making of improvements should be the securing of the services of an engineer and the making and adoption of detailed plans of the public works to be done, all as a condition precedent to the apportionment of benefits. The act states that shall be done "first;" it is further patent that no valid apportionment of benefits can intelligently be made until that is done and that it is only for such improvements so planned that a lawful apportionment can be made.

In its case in chief the district offered evidence that it had employed a surveyor to make a map of the boundaries of its

district and a list of the legal descriptions of the land involved; that there were no engineering problems involved; that it had a man on its board of long experience in this type of work. It offered its resolution of April 9, 1940, heretofore set out. It produced the engineer who had prepared the detailed plans for the Papillion Drainage District in 1909 and showed that those plans had been made available to at least one member of its board. There, however, was no showing that those 1909 plans were adopted by the district as its detailed plans of the work to be done, nor that it was following or proposed to follow them. Its engineer witness indicated they would need to be "redesigned." The resolution of April 9, 1940, made no reference to those plans. It is apparent that that resolution of two sentences is merely a sketchy outline of a general policy. The first sentence as to repairing the levees along the main ditch is qualified with "where insufficient" without any indication as to what levees are deemed insufficient, or the extent or manner of the repair work necessary. The second sentence as to "construction, repair and maintenance" is limited by "as may be necessary" without indication as to what "may be necessary;" it is further limited by "the extent that funds become legally available" and the only reference to cost is that it shall not "exceed the benefits received by property within said district." This resolution cannot be held to be a compliance with the "detailed plan" provision of the statute.

From the evidence it may be gathered that the board of directors had a general plan of what they thought ought to be done, but other than as expressed in the resolution it existed entirely in the confines of their separate minds. One member of the board apparently held to the view that the first work to be done was the repairing of the levees on the creek in the upper portion of the district. That was the work which was apparently immediately undertaken. Another member held the view that the next work to be undertaken was the building of a levee along the south side of the creek from the upper part of the district to the creek's mouth, including the rebuilding of levees already construct-

ed by the appellant landowners; that when that should be done then a similar structure should be built along the north side of the creek. We find no satisfactory evidence that the board ever adopted such a plan, nor that it had the advice of a competent engineer on all the detailed problems that enter into the determination of the adequacy of such an improvement or the benefits to be derived from it. There appears to have been some question as to whether certain land on the north side of the creek was in Iowa or Nebraska with the resultant question of the right of the district to locate structures thereon.

It does not appear that any estimate was ever made of the total cost of the "plan of improvement," nor do we find any satisfactory evidence of a plan of procedure for the expenditure of the moneys to be raised by the assessment already made. Neither is there satisfactory evidence as to what the contemplated improvement involved sufficient to measure whether or not the work was being done according to plan, or when a landowner might know that the work had been completed for which his lands had been assessed.

This record contains no plans of any system of improvements which will be of benefit to the lands of the appealing landowners. The work may or may not be done down to their lands on the lower reaches of the creek. If this proceeding is approved they will be compelled to pay the assessments made without the assurance contemplated by the act that work will be done which will benefit their lands.

The necessity for the making of detailed plans as a condition precedent to the proper apportionment of benefits was established by the district's witness, the engineer who prepared the 1909 plans. He testified to the various elements that would have to be known, including the volume of water to be handled, before the height of the levees, the distance between the levees, the manner of their construction, or a "complete structure" could be designed; that the district faced two physical problems, "one of making repairs and adequate *redesign* of the existing ditch, and then the other part of the extension to the Missouri river" and that "you

have to determine the sizes that are necessary to carry the volume of water * * * and you do it by figuring or by experiments." He was then asked to assume the adoption by the board of the resolution of April 9, 1940, hereinbefore set out, and "regardless of whether that meets with engineering technique or not, is that in your judgment a workable program to accomplish the repair and maintenance necessary and essential to the objects and purposes of this district?" He answered: "Yes. I will answer yes, but I would like to explain that this doesn't express the figures and dimensions so that the plan could be related to the apportionment of benefits. The thing that we ordinarily have to have, by relying upon the adequacy of the improvement to accomplish the purpose of protecting the land from floods, then you could proceed to apportionment of benefits and with that, assume 100 per cent. perfect plan and no floods, you could determine how that plan affects all of the lands." In answer to another question he stated that "the apportionment of benefits is made over the district with respect to the plan; how it affects the land or increases its value."

The next question is whether or not the failure of the district to have such detailed plans made can be presented to the district court in this proceeding. Section 31-513, Comp. St. 1929, provides for an appeal by the landowner "claiming to be aggrieved" by the apportionment of benefits made by the board, and provides that the district court after hearing "shall increase or reduce the units of benefits * * * where the same may be required in order to make the apportionment equitable." From this the district argues that the district court has only the right to increase or decrease the units of benefits apportioned. We do not think that such a conclusion follows. It is clear that these provisions of the act presuppose a prior compliance by the district with the first sentence of section 31-511, Comp. St. 1929, to wit, "having first, with the aid of such engineer, surveyor and other assistants as they may have chosen, made detailed plans of the public work to be done." Obviously had that been done in this case then the question to be presented on appeal

would have been that of the correctness of. the apportionments. We will not assume that the legislature intended to permit the district to ignore the plain provision of the statute and to deny the landowner any relief from the results of that violation.

This court in *White v. Papillion Drainage District*, 96 Neb. 241, 147 N. W. 218, had under consideration a number of questions concerning provisions of this same statute. It was there held: "If the detailed plans and estimate are insufficient they should be corrected upon the hearing of apportionment of benefits." It seems obvious, if the question of the sufficiency of the plans may be corrected at that hearing, that the absence of any such plans may likewise be considered at that hearing. The district's position is that the resolution of April 9, 1940, and the Papillion Drainage District's plans constitute the "detailed plans" of this district. If their contention is correct then the sufficiency of those plans was a proper question for consideration at the hearing on the apportionment of benefits. Of necessity it is a proper matter to be considered by the district court on appeal from the apportionment of benefits. We think there is a substantial defect in the proceedings leading up to the apportionment of benefits and that it may be presented as has been done here. This conclusion is in accord with the decision in *Scottsbluff Drainage District v. Scotts Bluff County*, 113 Neb. 187, 202 N. W. 455.

The statute, section 31-513, Comp. St. 1929, provides that the hearing in the district court shall be in a summary manner as a case in equity. While the landowners in their notices to the county clerk gave particular reasons for their objections, the fact remains that they did object to the apportionment of any benefits to their lands. The statute does not appear to contemplate the use of exact pleadings in these cases. In the district court the district carried the burden of establishing the correctness of its apportionment. In doing that it clearly recognized that whether or not it had "made detailed plans" with the aid of an engineer, surveyor or other assistants, was an issue and, as has been

pointed out, it offered evidence in its case in chief heretofore summarized as to that issue.

The judgment of the district court is reversed, and the apportionments of benefits appealed from are held to be void and are set aside.

REVERSED.