CHICAGO AND NORTH WESTERN RAILWAY COMPANY, A
CORPORATION, APPELLANT, V. PAYNE CREEK DRAINAGE
DISTRICT, APPELLEE.

26 N. W. 2d 607

Filed March 28, 1947.    No. 32131.

*Wymer Dressler* and *R. D. Neely,* for appellant.

*T. L. Grady,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and ANKENY, District Judge.

MESSMORE, J.

This is a suit for an injunction, challenging the jurisdiction of the Payne Creek Drainage District to levy units of benefit against the property of the Chicago and North Western Railway Company, or to let a contract, or to proceed with the proposed drainage improvement, for the reason that there are jurisdictional defects in the procedure for the organization of the drainage district. The defendant district demurred to the plaintiff's petition filed March 4, 1946. The trial court sustained the demurrer, denied a temporary injunction, and dismissed the plaintiff's petition. Plaintiff appealed. Plaintiff thereupon filed a petition for injunction pending the appeal, the purpose being to maintain the status quo of the proceedings. The injunction was granted, conditioned upon the plaintiff filing a bond in the sum of $2,000, to be approved by the clerk of the district court, to pay all damages sustained by the defendant if the judgment appealed from is affirmed. The plaintiff did not appeal from any of the proceedings with reference to the organization of the drainage district.

The plaintiff as appellant contends that the trial court erred: In refusing to grant a temporary injunction; by dismissing the plaintiff's petition without first having a final hearing at which evidence might be taken; and by sustaining the defendant's demurrer.

The appellant sets forth in its petition certain claimed defects in the organization of the drainage district which it contends are jurisdictional, rendering the pro-

ceedings for the formation of such district null and void, and that this action for injunctive process constitutes the proper procedure in such a case.

"Drainage proceedings may be collaterally attacked where they are not merely irregular, but are void for jurisdictional defects, * * *." 28 C. J. S., Drains, § 36, p. 335.

Defects on the face of the record showing want of jurisdiction are ground for collateral attack. See 19 C. J., Drains, § 45, p. 635, note 70 (b); Donner v. Highway Comrs., 278 Ill. 189, 115 N. E. 831.

Appellant cites Haecke v. Eastern Sarpy County Drainage District, 141 Neb. 628, 4 N. W. 2d 744: " 'Statutory provisions authorizing assessments of special taxes against property benefited by public improvements are to be strictly construed, and it must affirmatively appear that the taxing authorities have taken all steps which the law makes jurisdictional; the failure of the record to show such proceedings will not be aided by presumptions.' Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734."

It is the appellant's contention, if the record fails to show affirmatively the necessary jurisdictional steps in the formation of a drainage district as required by chapter 31, article 4, R. S. 1943, jurisdiction does not exist, and the proceedings are null and void. We will discuss the alleged jurisdictional defects about which complaint is made in their logical sequence.

The appellant's petition alleges in substance that the petition for the formation of the drainage district did not set forth the number of landowners in the proposed district as required by section 31-402, R. S. 1943, to disclose whether the petitioners constituted the requisite percentage of landowners and, further, that the board of county commissioners made no finding or record of such facts.

Section 31-402, R. S. 1943, provides: "When the district proposed contains real estate owned by less

than twenty persons or corporations, one fourth of said number shall be sufficient to petition for the formation of such district. When there are more than twenty such owners, ten or more owners of real estate therein may sign a petition for the formation of such district, and file said petition with the county clerk of the county having the largest body of land within the proposed district. The petition shall suggest the boundaries of the district, the number of directors that the district shall have if formed, and the amount of bond each shall give."

The proceedings for the organization of the drainage district are attached to and made a part of appellant's petition. The petition for the formation of the drainage district, filed in the office of the county clerk of Stanton county on June 18, 1945, and addressed to the board of county commissioners, complied with section 31-401, R. S. 1943, which sets forth the conditions upon which a drainage district may be formed. The petition set forth that the undersigned owners of real estate embraced within the proposed boundaries requested the board of county commissioners to form a drainage district under the provisions of sections 31-401 to 31-450 inclusive, R. S. 1943, and suggested the boundaries of the proposed district to be fixed as lying within the district. The petition further set forth the name of the proposed district, that three directors be elected to manage the affairs of the district and be required to give bond in the sum of $500 each. The petition was signed by five real estate owners embraced within the proposed district.

Section 31-402, R. S. 1943, does not require that the petition for the creation of a drainage district must state the number of property owners and recite how many sign the petition. This provision of the statute indicates the petition for the organization of a drainage district will be sufficient if it appears that it is actually signed, as a matter of fact, by the required percentage

of property owners within the proposed district, and such fact may be shown in the proceedings for the formation of the district. The only mandatory requirements of the foregoing provision of the statute are that the petition shall suggest the boundaries of the district, the number of directors that the district shall have if formed, and the amount of bond each shall give. The appellant, in its petition, does not allege that the petition for the organization of the drainage district was not signed by a sufficient number of landowners. The petition for the formation of the drainage district discloses that the signers thereof petition the board of county commissioners to form a drainage district under the provisions of sections 31-401 to 31-450 inclusive, R. S. 1943. It will be noted that section 31-402, R. S. 1943, is included in the petition for the formation of the drainage district, so it is apparent that the county board of commissioners acted upon the petition to determine the percentage of signers thereof required by section 31-402, R. S. 1943.

The proceedings for the organization of the drainage district, which includes the order for publication of the notice of hearing to fix the boundaries of the drainage district, the hearing pursuant to the published notice, and the fixing of the boundaries as set forth in the petition, and the fact that 1195 acres of land voted out of a possible 1554 acres, all show conclusively that a sufficient number of landowners signed the petition for the organization of the drainage district. Appellant's contention is not meritorious.

The appellant contends the board of county commissioners at the hearing dated July 16, 1945, did not fix the boundaries of the district by description as required by law, but merely by reference to the petition for the organization of the district. The appellant further contends that the notice published by the county clerk and calling for the election on August 14, 1945, erroneously

stated that the county board of commissioners had fixed the boundaries by description.

Section 31-404, R. S. 1943, provides in part: "Thereupon the county board of such county shall take to its assistance the county surveyor of the county and shall determine whether or not the boundaries of the proposed district are reasonable and proper, * * * ."

Section 31-405, R. S. 1943, provides: "Thereupon the county clerk shall publish one notice once each week for three weeks in a newspaper published in the proposed district, * * * . The notice shall state the filing of the petition; that it is filed under the provisions of sections 31-401 to 31-450, giving the title thereof in full; the boundaries of the proposed district as fixed by the county board; that an election will be held at a certain place in the proposed district, which place shall be named in said notice, * * * ."

The two foregoing statutory provisions are involved in this assignment of error, and will be taken up in continuity.

The order fixing the boundaries provided: "That the boundaries of said proposed district, as set forth in the petition, are reasonable and proper and that the best interests of said district will be promoted, and justice and equity be done to all persons, by establishing and fixing the boundaries thereof as set forth in said petition." It appears from such order, by the language heretofore quoted therefrom, that the county board, in compliance with section 31-404, R. S. 1943, determined that the boundaries of the proposed district were reasonable and proper as set forth in the petition for the organization of the drainage district. We see no legal barrier to the board of county commissioners fixing the boundaries as set forth in the petition for the organization of the drainage district, especially so when the order discloses that after hearing all of the evidence in support of the petition, and being fully ad-

vised in the premises the board fixed the boundaries as suggested in the petition.

It is appellant's contention that the notice published by the county clerk, as provided for in section 31-405, R. S. 1943, erroneously stated that the county board had fixed the boundaries by description; that the statute commands the notice shall state "* * * the boundaries of the proposed district as fixed by the county board; * * *." The record discloses that the notice of fixing boundaries for the drainage district set forth the boundaries in detail, as described in the petition for the organization of the drainage district. We conclude that the notice is sufficient to meet the requirements of the law.

The appellant contends that at the election the ballots failed to disclose and show the nature of title or interest of any of the voters in any of the land. This alleged jurisdictional defect is not included in the allegations of the appellant's petition, but is set forth in its brief.

Section 31-406, R. S. 1943, provides: "Such election shall be by ballot which shall be signed by the voter, and shall have thereon a list of the land and lots which the voter claims the right to vote." This provision sets forth the form of the ballot which lists the property on which the voting is based, the description of the property, number of acres, total number of votes claimed on same, nature of title to or interest in same, and provides for the signature of the voter.

Section 31-407, R. S. 1943, provides in part: "At all the elections the county clerk, * * * and such assistants as he shall choose, shall constitute the election board and the canvassing board. Any person may cast one vote on each proposition to be voted on for each acre of·land or fraction thereof, * * * which he may own or have an easement in, as shown by the official records of the county where the land or lots may be. Any corporation, * * * owning or having an easement in any land or lot, may vote at such election, the same as an individual may. * * * The board shall have the right

to refer to the official records of the counties where the real estate may be, for information as to who are entitled to vote. The board shall sign a statement giving the result of the election, and the same shall be recorded in the office of the county clerk."

It is true that the voters, in stating the nature of title to or interest in the land which is fully described in each ballot, wrote down the nature of the documents by which they acquired title. It is apparent upon the face of the ballots that the voters claimed to be owners of the land described in the ballots, which is sufficient to meet the statutory requirement.

With reference to section 31-407, R. S. 1943, the appellant contends that the canvassing board did not sign and record any sufficient statement as required by law, giving the result of the election; further, that there was no declaration as to who were elected directors.

The record shows the names of the voters; whether they voted for or against the formation of the drainage district; the number of acres each voter claimed to own and the total number of votes claimed, and recited on such exhibit the following: "Payne Creek Drainage District Election August 14, 1945." On another exhibit the canvassing board certified that in accordance with the provisions of the law, the "foregoing is a true and correct exhibit of the votes cast for the Formation of the Payne Creek Drainage District and the Board of Directors thereof," naming the place of the election and the date thereof, as shown by the ballots on file at the county clerk's office, signed by the canvassing board.

From the record it is apparent that sufficient compliance was made by the canvassing board with the statutory requirement. Appellant's contention is without merit.

The appellant contends, as a part of the organization procedure, the first board of directors must be elected and not appointed; that there is no authority to

appoint one member of the board of directors; and that there was no vacancy in the board of directors in the instant case until there had first been a duly elected and qualified board of three members.

Section 31-404, R. S. 1943, provides in part: "The board shall also determine the number of directors that the district shall have, if formed, and the amount of the bond to be given by each, and shall make a record of its action."

Section 31-405, R. S. 1943, notice of election, provides for the board of directors elected, giving the number of such board as fixed by the county board pursuant to section 31-404, R. S. 1943. The number of directors fixed by the county board in the instant case was three. The contention is, the record must affirmatively show that a board of three directors was elected and qualified. The record in the instant case discloses upon the ballots cast at the drainage district election the number of votes for each person voted upon as directors. The canvass of the election discloses the number of votes cast for directors.

Section 31-409, R. S. 1943, provides in part: "The person elected a director receiving the least number of votes shall hold office for one year, the next higher for two years, and so on, and the term of each shall be adjudged so as to make the term of one director expire each year." The statute then provides for the officers of the district, the annual election, the hours of the election and the place, and further provides: "Vacancies in the office of directors may be filled by the remaining directors until the next election. All directors and officers shall hold office until their successors are elected and qualified."

The record affirmatively shows that three directors were elected. One elected director failed to qualify. Subsequently, as provided for by section 31-409, R. S. 1943, the vacancy was filled by the two remaining elected and qualified directors. The appointed director qualified

as provided for by law. We believe the affirmative showing in the record disposes of the appellant's contention.

The appellant contends that only a full, elected board of directors had authority to act for the district; that the drainage district notice, published for the purpose of hearing all parties interested in the apportionment of benefits to the various tracts of real estate within the boundaries of the drainage district to be held by the board of directors of the district on October 2, 1945, giving the place, was signed by two directors of the district which did not constitute a full board of directors required to act as a unit. The notice referred to, required to be published once as provided for by section 31-412, R. S. 1943, was complete in its publication by having been published twice, a week apart. The record affirmatively discloses that at the time of the signing of the notice there were two elected, qualified directors, one of the directors elected failing to qualify. Section 31-412, R. S. 1943, makes no requirement that the notice as provided for therein shall be signed by the board of directors. Section 31-412, R. S. 1943, indicates that the notice heretofore mentioned is sufficient if the same be the act of the directors, and in this connection there is no allegation in the appellant's petition that the notice to be given was not the act of the directors. Under the circumstances two directors would constitute a sufficient quorum to transact the business of the corporation until a third director is appointed and qualified.

The control of corporate affairs vested in a board of directors may be exercised by a majority where there are no bylaws or rules of the corporation to the contrary. There is nothing in the proceedings for the organization of the drainage district in the record in the instant case to disclose that a majority of the directors cannot act officially as a quorum to transact the business of the corporation. See 14A C. J., Corporations, § 1850, p. 90, note 52, and cases cited thereunder; 19 C. J. S., Corporations, § 749, p. 92; 13 Am. Jur., Corporations,

§ 959, p. 917; 2 Fletcher Cyclopedia, Corporations, (perm. ed.) § 552, p. 433.

The appellant contends that the drainage district board disregarded the statutory method of fixing units of benefit.

Section 31-411, R. S. 1943, in part, provides as follows: "The land least benefited shall be apportioned one unit of assessment, and each tract receiving a greater benefit shall be apportioned a greater number of units or fraction thereof, according to the benefits received."

The record discloses that the report on fixing the units of benefit shows two tracts of land were assigned one-half unit each. It is the appellant's contention, therefore, that the foregoing provision of section 31-411, R. S. 1943, was violated, and such violation constituted a jurisdictional defect. The other real estate was assessed in conformity with the statute and was not proportionately out of line with the assessment of benefits with the tract here involved, and did not change the taxes on any of the tracts of land. The appellant, in its petition, does not allege that it was prejudiced in any manner by the assessment of units. The foregoing action on the part of the drainage district board is, at most, an irregularity, but does not constitute a jurisdictional defect.

"Errors of the board in making the apportionment of benefits may be corrected on appeal. * * * the findings or order of the board in determining the apportionment of benefits which are not of a jurisdictional nature will not be considered." White v. Papillion Drainage District, 96 Neb. 241, 147 N. W. 218. See, also, State v. Hanson, 80 Neb. 724, 115 N. W. 294.

The appellant further contends that the report of the board of the drainage district as to the units of benefit, was never signed by the board, but by one member thereof only, and was void, and constituted a jurisdictional defect. The report was filed in the county clerk's office on October 3, 1945, signed by one director. Three

months thereafter the two other directors of the drainage district signed the report.

The appellant also contends the publication of the notice of the apportionment of benefits was false and fraudulent for the reason that it discloses all three of the directors as signing the report, which was not the fact.

Section 31-412, R. S. 1943, provides in part: "The directors, having completed the apportionment of benefits, shall make a detailed report of same and file such report with the county clerk. Thereupon the board of directors shall cause to be published, once each week for three consecutive weeks in a newspaper published at the county seat of each county wherein any lands or lots are situated, a copy of the apportionment so far as the lands or lots within the county are concerned, and a statement of the total number of units of benefit in the district."

The appellant lays stress upon the word "directors" appearing in section 31-412, R. S. 1943, contending that when the "directors" do not sign the report, then such report is void. With this contention we are not in accord. The record shows upon its face, in the detailed report of the directors of the drainage district that, "pursuant to notice given in the manner required by law, the Board of Directors of the Payne Creek Drainage District made the following apportionment of benefits on a unit basis, as required by law, * * *." Clearly, the report constituted the act of the board of directors of the drainage district, and the fact that such report was not signed until a later date by two of the directors is, at most, an irregularity, but does not constitute a jurisdictional defect.

The appellant contends that the board never employed a competent engineer. The engineer who made the detailed plan appearing in the record was in the employ of the Federal Government, connected with the Soil Conservation Service of the Department of Agricul-

ture of the United States. It is the appellant's contention that section 31-408, R. S. 1943, requires that after the district is formed, as provided for by law, all work by the district shall be done under the supervision of the board of directors of the district. The appellant's petition alleges, in substance, that the appellee entered into an agreement, in writing, with the Soil Conservation Service of the Department of Agriculture of the United States, whereby the representative of said service should have authority to decide all matters with reference to the construction of the proposed improvements within said drainage district, and that the board of directors of the drainage district should yield to the federal representative all their authority in the premises; that there is no authority in law for the district to delegate its duty and authority, and its act in such respect is an unlawful act which renders the proceedings null and void.

Section 31-411, R. S. 1943, provides in part: "The board of directors having first, with the aid of such engineer, surveyor and other assistants as it may have chosen, made detailed plans of the public work to be done in accordance with section 31-401, * * *." This section of the statute provides that the board of directors may employ an engineer, surveyor and such other assistants to make detailed plans of the public work to be done in accordance with section 31-401, R. S. 1943. It makes no specific requirement as to the qualifications of an engineer, and the mere fact that an engineer in the employment of the Federal Government made the detailed plans for the drainage district does not mean that the drainage district has delegated its duty or authority to an agency of the Federal Government. If the appellant desired to test the qualifications of the engineer, it should have done so by direct attack.

With reference to the appellant's contention that the project here involved is a soil conservation project, this is utterly destroyed by the fact that a transcript

of the drainage district proceedings includes a copy of the petition to create the drainage district, and is made a part of the appellant's petition. The foregoing contention of the appellant is without merit.

The appellant contends that the drainage district board never adopted a plan of the proposed improvements and cites Haecke v. Eastern Sarpy County Drainage District, *supra*, contending the holding therein indicates that the proceedings in the instant case are wholly void for want of the adoption of a proper plan, and want of an estimate of the cost. Part of the holding in the cited case is that the act states that "the legislature intended that the first step in the making of improvements should be the securing of the services of an engineer and the making and adoption of detailed plans of the public works to be done, all as a condition precedent to the apportionment of benefits. The act states that shall be done 'first;' it is further patent that no valid apportionment of benefits can intelligently be made until that is done and that it is only for such improvements so planned that a lawful apportionment can be made."

It does not appear that any estimate was ever made of the total cost of the plan of improvement.

The cited case does not pass upon the applicability of section 31-550, Comp. St. 1929, now section 31-450, R. S. 1943, which will later be discussed in this assignment of error. The case involved a direct attack on the proceedings of the drainage district and in no manner conflicts with the instant case, as is hereafter explained.

Section 31-412, R. S. 1943, makes provision for presenting objections to the apportionment of benefits by reason of the improvement, by providing for personal appearance, appearance by counsel, or written objections. In the instant case there were no objections to the apportionment of benefits by reason of the improvement. Haecke v. Eastern Sarpy County Drainage Dis-

trict, *supra,* was an appeal from an affirmation of the apportionment of benefits to certain lands by landowners who had filed written complaints with the county clerk against said benefits fixed or determined by the district, and objected to any assessments that may be levied against any or all lands.

Section 31-411, R. S. 1943, being considered in this assignment of error, provides in part: "The board of directors having first, with the aid of such engineer, surveyor and other assistants as it may have chosen, made detailed plans of the public work to be done in accordance with section 31-401, * * * ."

The appellant cites section 31-450, R. S. 1943, as a section of the statutes supplementing section 31-411, R. S. 1943. From a reading and analysis of section 31-450, R. S. 1943, it only applies when the cost of the contemplated work equals 20 percent of the assessed value of the lands assessed for such improvement, and likewise requires an election to vote on proceeding with the work, and has no connection with section 31-411, R. S. 1943. The appellant, in its petition, does not allege that the proposed improvement in the drainage district here being considered would equal or exceed 20 percent of the assessed valuation of the lands.

Section 31-411, R. S. 1943, does not require any plan or estimate to be filed with the county clerk, it provides that the board of directors, having first secured the aid of an engineer, make a detailed plan of the work to be done. A detailed plan of the work is shown by the record for the organization of the drainage district dated October 2, 1945, and filed in the office of the county clerk November 28, 1945. Appellant's contention is not meritorious.

"The legality of the organization of a drainage district ordinarily cannot be collaterally attacked, except for defects which show that it has no de facto existence or the organization is void for want of jurisdiction.

"It is an established rule of law that where a bona

fide attempt has been made to organize a drainage or reclamation district, and such district exists as a de facto corporation, the legality of its organization cannot be collaterally attacked for irregularities and defects not affecting the jurisdiction of the tribunal by which it was created, * * *." 28 C. J. S., Drains, § 36, p. 333. See Omaha & N. P. R. Co. v. Sarpy County, 82 Neb. 140, 117 N. W. 116; Campbell v. Youngson, 80 Neb. 322, 114 N. W. 415; Dodge County v. Acom, 61 Neb. 376, 85 N. W. 292; Darst v. Griffin, 31 Neb. 668, 48 N. W. 819.

There are other matters of minor importance set forth in the appellant's brief which we deem unnecessary to discuss, in that the same do not in any manner constitute jurisdictional defects in the proceedings for the organization of the drainage district.

From a careful analysis of the appellant's petition and the proceedings for the organization of the drainage district attached thereto and made a part thereof, we conclude that the demurrer was properly sustained by the trial court; that none of the objections raised by the appellant to the organization of the drainage district constitute jurisdictional defects, but are, at most, irregularities and not subject to collateral attack; and the trial court did not err in denying the temporary injunction and dismissing the appellant's petition.

AFFIRMED.