HERMAN KELLE ET AL., APPELLANTS, v. CRAB ORCHARD RURAL FIRE PROTECTION DISTRICT ET AL., APPELLEES.

83 N. W. 2d 51

Filed May 10, 1957. No. 34132.

*Ginsburg, Rosenberg & Ginsburg* and *Philip F. Nestor,* for appellants.

*Raymond B. Morrissey* and *Homer L. Kyle,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Johnson County. It involves an action whereby four resident freeholders of the area covered by Crab Orchard Rural Fire Protection District of Johnson County, Nebraska, and who have real and personal property located therein that would be liable for taxes if levied to operate and maintain it, seek to enjoin the district, and its officers and directors, from exercising the statutory duties and functions of a legally created rural fire protection district. The relief sought is grounded on a claim that the petition initially filed in the office of the county clerk of Johnson County for the formation thereof was legally insufficient. The trial court found generally for the defendants and dismissed plaintiffs' petition. Their motion for new trial having been overruled, the plaintiffs perfected this appeal.

Appellee Crab Orchard Rural Fire Protection District, which we shall hereinafter refer to as the district, was organized under and pursuant to the authority of Chapter 35, article 5, R. R. S. 1943, which article relates to the subject of "Rural Fire Protection Districts." The action is in the nature of a collateral attack seeking injunctive relief because of alleged jurisdictional defects in the procedural steps leading up to the formation of the district. Rural fire protection districts may be collaterally attacked when the defects complained of are jurisdictional and not merely irregularities. Prucka v.

Eastern Sarpy Drainage Dist., 157 Neb. 284, 59 N. W. 2d 761; Chicago & N. W. Ry. Co. v. Payne Creek Drainage Dist., 148 Neb. 139, 26 N. W. 2d 607.

The general rule is that nonjurisdictional irregularities and defects in the formation of a district, such as a rural fire protection district, can be challenged only in a direct proceeding to test the validity of its organization, but if they are of such a character that the proceedings are in fact void then that fact may be shown in any action. See, Cacek v. Munson, 160 Neb. 187, 69 N. W. 2d 692; Prucka v. Eastern Sarpy Drainage Dist., *supra;* Chicago & N. W. Ry. Co. v. Payne Creek Drainage Dist., *supra.*

As stated in Cacek v. Munson, *supra,* quoting from 33 C. J., Judgments, § 39, p. 1078: " 'Want of jurisdiction must be distinguished from error in the exercise of jurisdiction. Where jurisdiction has once attached, mere errors or irregularities in the proceedings, however grave, although they may render the judgment erroneous and subject to be set aside in a proper proceeding for that purpose, will not render the judgment void, and until set aside it is valid and binding for all purposes and cannot be collaterally attacked.' "

The provisions of Chapter 35, article 5, R. R. S. 1943, insofar as material to the issues herein raised, provide:

"* * * sixty per cent of the freeholders residing in any territory in the State of Nebraska, equivalent in area to one township or more situated outside the corporate limits of any city or village, are hereby authorized and empowered to initiate the formation of rural fire protection districts * * *." § 35-502, R. R. S. 1943.

"Whenever sixty per cent of the freeholders residing in any rural territory, equivalent in area to one township or more, elects to form, organize, establish, equip, and maintain a rural fire protection district, they shall signify such intention by presenting to the county clerk of the county or counties in which such territory is situated, a petition setting forth the desires and purposes of

such petitioners. Such petition shall contain the full names and post-office addresses of such petitioners, * * *." § 35-503, R. R. S. 1943.

"Upon the filing of such petition in the office of the county clerk, the county clerk shall determine and certify that such petition has been signed by at least sixty per cent of the freeholders whose names appear on the current tax schedules in the office of the county assessor and who appear to reside within the suggested boundaries of the proposed district. He shall thereafter designate a time and place for said petition to be heard by the county board. Notice of such hearing shall be given by publication two weeks in a newspaper of general circulation in the county, the last publication appearing at least seven days prior to said hearing; said notice shall be addressed to 'all persons residing in or having any interest in real or personal property located within the following boundaries' and shall include a statement of the proposed boundaries as set forth in the petition; * * *." § 35-504, R. R. S. 1943.

The petition for the formation of the district was filed in the office of appellee Wayne C. McCoy, the then duly elected, qualified, and acting county clerk for Johnson County, on March 26, 1955. He thereafter, on March 28, 1955, transmitted the petition to the board of county commissioners of Johnson County, certifying that he had "examined the signatures affixed to said petition" and "determined that the persons signing said petition comprise more than sixty percent of the freeholders residing within the boundaries of the proposed district." He therein also designated a time and place for said petition to be heard by the county board and caused proper notice thereof to be published in the Tecumseh Chieftain, a newspaper of general circulation in Johnson County.

In Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734, we quoted the following: " 'The determination of a township board that a majority of the property holders have signed a petition for a local improvement is not

conclusive, and, in the absence of statutory provisions to the contrary, the question may be investigated in a collateral proceeding.' (Auditor General v. Fisher, 47 N. W. Rep. [Mich.] 574.)"

However, in Majerus v. School Dist. No. 52, 139 Neb. 823, 299 N. W. 178, we said: "The law presumes official acts of public officers, in a collateral attack thereon, to have been done rightly, and with authority, in the absence of evidence to the contrary, and, in such a collateral attack, acts done, which presuppose the existence of other acts to make them legally effective, are presumptive proof of the existence of such other acts." See, also, School Dist. No. 49 v. School Dist. No. 65-R, 159 Neb. 262, 66 N. W. 2d 561.

We said in Olsen v. Grosshans, 160 Neb. 543, 71 N. W. 2d 90, quoting from 78 C. J. S., Schools and School Districts, § 37, p. 703, that: " 'The character and qualifications of the persons by whom a petition is to be signed, and the number or proportion of such persons whose signatures must be attached to the position (petition), ordinarily are prescribed by the statutes which provide for the presentation of the petition, and compliance with such requirements is essential to the validity of the petition.' "

From a careful reading of the foregoing quoted statutory provisions it becomes self-evident that the jurisdictional requirements of a petition, in order to give the county clerk authority to proceed and designate a time and place for said petition to be heard by the county board and to cause a notice thereof to be published, are that 60 percent of the freeholders residing within the area of the proposed district have signed it. In the absence thereof the petition would be insufficient and the county clerk without authority to act. See, State ex rel. Larson v. Morrison, 155 Neb. 309, 51 N. W. 2d 626; Morse v. City of Omaha, *supra*. We think the record establishes that 60 percent of the freeholders residing in the pro-

posed district signed the petition before it was filed with the county clerk on March 26, 1955.

But appellants contend that 60 percent of the freeholders residing in the area of the district did not sign their "full names" to the petition nor give their "post-office addresses," as section 35-503, R. R. S. 1943, provides they shall. It is established by the evidence adduced that some 23 of those signing the petition did not do so with their full names nor, in many instances (38), were the addresses given complete and, in a few instances (6), no addresses were given.

In Enewold v. Olsen, 39 Neb. 59, 57 N. W. 765, 42 Am. S. R. 557, 22 L. R. A. 573, we said: "In law, the name of a person consists of one given name and one surname, the two, using the given name first and the surname last, constitute such person's legal name; * * *." See, also, McCabe v. Equitable Land Co., 88 Neb. 453, 129 N. W. 1018; Butler v. Smith, 84 Neb. 78, 120 N. W. 1106, 28 L. R. A. N. S. 436; 65 C. J. S., Names, § 3a, p. 2.

And, as stated in 38 Am. Jur., Name, § 10, p. 600: "A married woman's name consists, in law, of her own Christian name and her husband's surname, marriage conferring on her the surname of the husband. Her correct first name is her maiden Christian name, and not the Christian name of her husband."

We do not think the requirements that those signing a petition do so with their "full names" and give their "post-office addresses" are jurisdictional as relating to their character or qualifications but rather for the purpose of identification and to assist the county clerk in making a determination as to whether or not 60 percent of the freeholders residing in the area proposed as a district have actually signed the petition filed with him for that purpose. In view thereof these deficiencies are merely irregularities and, as such, not a basis for declaring the organization of the district void.

There is one further question raised by appellants that needs to be considered. Most of the signatures on

the petition were obtained thereto in 1954. Then, in the early part of 1955, Keith Lynch submitted the petition to Wayne C. McCoy, the county clerk, and asked him to check it to see if there were sufficient signatures thereon to meet the statutory requirements relating thereto. Lynch did not ask McCoy to file the petition and McCoy did not do so. McCoy took about a week to check the signatures on the petition and then advised Lynch he did not have enough signers. Lynch thereupon took the petition and between March 4 and 12, 1955, 16 additional signatures were added thereto. Lynch then filed the petition in the office of the county clerk on March 26, 1955. We find nothing wrong with this procedure. It seems to us a very practical thing to do and one that avoided the necessity of securing and filing another petition since more than 60 percent of the resident freeholders of the area were actually interested in forming the district. If the petition had been submitted to and filed by the county clerk in the first instance then it is possible that what we said in Ayres v. Moan, 34 Neb. 210, 51 N. W. 830, 15 L. R. A. 501, would apply.

In view of what we have herein held we think the trial court was correct in dismissing the petition. We therefore affirm its judgment doing so.

AFFIRMED.