LEROY E. ELLIOTT ET AL., APPELLANTS, V. CITY OF AUBURN, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

110 N. W. 2d 218

Filed July 14, 1961. No. 34883.

*Dwight Griffiths,* for appellants.

*John Ferneau, Yale C. Holland, Dale Cullen, Clarence E. Heaney, Jr.,* and *Donald F. Stanley,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J., dissenting.

The facts in this case are set out in detail in our opinion. I shall set out only those pertinent to the consideration of the case.

This is an action in equity against the county treasurer and others to declare special paving assessments void and to enjoin their collection. A demurrer was sustained to the plaintiffs' second amended petition. Plaintiffs appeal.

Plaintiffs' second amended petition with reference to the petition presented for the creation of the paving

district alleges in substance that on April 7, 1958, there were 19 or more resident owners of real estate directly abutting upon the streets petitioned to be improved, but that the petition presented to the mayor and city council was signed by not more than 11 resident owners owning property directly abutting upon the streets petitioned to be improved; that the 11 owners signing the petition did not constitute 60 percent of the resident owners as required by section 17-510, R. R. S. 1943; and that the petition for the creation of paving district No. 27 was therefore insufficient to confer jurisdiction or authority upon the city or upon its mayor and city council to enact an ordinance for the creation of a paving district as required by section 17-510, R. R. S. 1943.

The foregoing statement from the second amended petition constitutes the nub of the case. There are allegations of fraud which are immaterial. They are fully discussed in our opinion. The question, as I see it, is: First, whether the petition to create a paving district presented pursuant to section 17-510, R. R. S. 1943, is jurisdictional; and second, whether it may be collaterally attacked. In my judgment, the answer to both questions is in the affirmative if we are to follow the only Nebraska cases which involve special paving petitions where the question has been raised, or if we are to follow the majority rule over the country. Our opinion holds otherwise.

The truth of the factual allegation in the second amended petition that there were 19 or more resident owners owning property directly abutting upon the streets proposed to be improved and that only 11 signed, is a statement of fact, and stands admitted by the demurrer.

The methods by which cities of the second class are empowered to pave streets and to levy special assessments therefor are prescribed by sections 17-509 to 17-512, R. R. S. 1943. The method used in the instant case is covered by section 17-510, R. R. S. 1943, which is as

follows: "Whenever a petition signed by sixty per cent of the resident owners, owning property directly abutting upon the street, streets, alley, alleys, public ways or public grounds proposed to be improved, shall be presented and filed with the city clerk or village clerk, petitioning therefor, the governing body shall by ordinance create a paving, graveling or other improvement district or districts, and shall cause such work to be done or such improvement to be made, and shall contract therefor, and shall levy assessments on the lots and parcels of land abutting on or adjacent to such street, streets, alley or alleys especially benefited thereby in such district in proportion to such benefits, to pay the cost of such improvement." This section is the only one applicable on the facts herein.

Section 17-513, R. R. S. 1943, provides that the sufficiency of the petition is to be determined by the record in the office of the county clerk or register of deeds "at the time of the adoption of said ordinance."

Section 17-509, R. R. S. 1943, contains the following provision on street improvements: "Provided, that none of the improvements hereinbefore named shall be ordered except as provided in sections 17-510 to 17-512."

As I view the facts in this case, they are controlled by Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734, which is not mentioned in any way in our opinion. The Morse case, like this one, was a proceeding in equity to hold a repaving ordinance void and to enjoin collection of special assessments. The statute involved, section 110, chapter 12a, Compiled Statutes, 1897, provided in substance that the city council could order repaving upon a petition of owners of a majority of the taxable front feet in any improvement district. A district was created and the improvement made. The plaintiff alleged that the repaving petition acted on by the city council did not in fact contain the names of the owners of a majority of the taxable front feet in the district. The city contended that the petition was regular upon

its face, that the city council so determined, and that the petition could not now be collaterally attacked. The following extracts from that opinion are pertinent herein: "The correct determination of the first question must depend upon whether a petition in fact containing the signatures of the owners of a majority of the taxable front feet is a jurisdictional prerequisite to valid action by the council in making the assessment. It may, in the first place, be remarked that the rule firmly established in this state by a long line of decisions is that statutory provisions authorizing the levy and collection of special assessments shall be strictly construed, and that the record of such proceedings must on its face affirmatively show a compliance with all the conditions made necessary by the statute to a valid exercise of the taxing power. In discussing this principle, IRVINE, C., in Hutchinson v. City of Omaha, 52 Nebr., 345, 349, expressing an individual opinion, said: 'Such grants of power hold out temptations and opportunities for the confiscation of property to such an extent that the protection of property rights demands that they should receive the very strictest construction, and that the courts should be insistent that the proceedings should be of the utmost regularity.' Again, in Batty v. City of Hastings, 63 Nebr., 26, it was said (p. 32): 'It is the settled construction of the statutes of this state relating to municipal corporations that the several steps required to be taken in assessing the cost of public improvements against property benefited must be construed strictly.' Medland v. Linton, 60 Nebr., 249; Grant v. Bartholomew, 58 Nebr., 839; Smith v. City of Omaha, 49 Nebr., 883; Harmon v. City of Omaha, 53 Nebr., 164. * * *

"Judge Cooley, in his work on Taxation (2d ed.), page 656, in construing provisions identical with that involved herein, says: 'Their legislative action, if properly taken, is conclusive of the propriety of the proposed improvement, and of the benefits that will re-

sult, if it covers that subject, but it will not conclude as to the preliminary conditions to any action at all; such, for example, as * * * that the particular improvement shall be petitioned for or assented to by a majority or some other defined proportion of the parties concerned. This last provision is justly regarded as of very great importance, and a failure to observe it will be fatal at any stage in the proceedings. And any decision or certificate of the proper authorities, that the requisite application or consent had been made, would not be conclusive, but might be disproved.'

"In 2 Dillon, Municipal Corporations, section 800, in discussing this question, it is said: 'Where the power to pave or to improve depends upon the assent or petition of a given number or proportion of the proprietors to be affected, this fact is jurisdictional, and the finding of the city authorities or council that the requisite number had assented or petitioned is not, in the absence of legislative provision to that effect, conclusive; the want of such assent makes the whole proceeding void, and the non-assent may be shown as a defense to an action to collect the assessment, or may, it has been held, be made the basis for a bill in equity to restrain a sale of the owner's property to pay it.'

"In the statute under consideration there is an entire absence of any provision tending to make the action of the city council in passing upon the petition final and conclusive."

The opinion then discusses cases from other jurisdictions, and then we find the following: "This court, in considering charter provisions like that involved herein, has many times said that the number of signers to the petition made necessary by statute was jurisdictional, although the question seems not in each case to have arisen in a collateral attack. Harmon v. City of Omaha, 53 Nebr., 164; Horbach v. City of Omaha, 54 Nebr., 83, 88; Leavitt v. Bell, 55 Nebr., 57; Grant v. Bartholomew, 58 Nebr., 839; City of Beatrice v. Brethren Church of

Beatrice, 41 Nebr., 358, 362; State v Birkhauser, 37 Nebr., 521.

"From an examination of the authorities upon the question we are of the opinion that the great weight of authority as well as right reason support the conclusion which we have reached, that is, that the petition with the number of signers required by statute is jurisdictional to the right of the council under an ordinance to repave a street; and that, being jurisdictional, it follows that the action of the city council, when not supported by such a petition, may be collaterally attacked."

This opinion has been cited many times in subsequent cases. In McCaffrey v. City of Omaha, 91 Neb. 184, 135 N. W. 552, the court said: " '* * * the whole tendency of recent legislation in this state has been to give those who are to be assessed with the cost of paving a voice in the determination of how, when and where the improvement shall be made.' Batty v. City of Hastings, 63 Neb., 26. In Morse v. City of Omaha, 67 Neb. 426, this court quoted with approval the following statement of the supreme court of the United States, in Ogden City v. Armstrong, 168 U. S. 224: 'No jurisdiction vested in the city council to make an assessment or to levy a tax for such an improvement, until and unless the assent of the requisite proportion of the owners of the property to be affected had been obtained,' and in the same case this court quoted from Sharp v. Speir, 4 Hill (N. Y.) 76, in which it was held that it was not competent for the city authorities to decide 'that a majority of the persons intended to be benefited had signed' the petition for the formation of the district, unless such was the fact, and that that question could be subsequently investigated by the courts. It also quoted from the supreme court of Michigan in Auditor General v. Fisher, 47 N. W. 574 (84 Mich. 128), to the effect that whether a majority of the property holders had signed the petition could be determined in collateral proceedings."

In Hoopes v. City of Omaha, 99 Neb. 460, 156 N. W. 1047, a 1916 case, the question of the sufficiency of a petition was raised. Omaha was then operating under a home rule charter, which contained a provision making a finding by the council final. In that case we said: "Where the statute makes the filing of a proper petition jurisdictional, the finding of the city council that the petition is sufficient is not conclusive, if, in fact, it is defective. Morse v. City of Omaha, 67 Neb. 426. In that case, however, it was said: 'In the statute under consideration there is an entire absence of any provision tending to make the action of the city council in passing upon the petition final and conclusive.'

"The present charter of Omaha makes the findings of the council final. The council acted under the statute and sustained the petition. Plaintiff did not appeal. She is therefore bound by the decision, if the statute is valid."

In Kelle v. Crab Orchard Rural Fire Protection Dist., 164 Neb. 593, 83 N. W. 2d 51, which involved the question as to whether 60 percent of the freeholders had signed a petition, we said: "In Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734, we quoted the following: ' "The determination of a township board that a majority of the property holders have signed a petition for a local improvement is not conclusive, and, in the absence of statutory provisions to the contrary, the question may be investigated in a collateral proceeding." (Auditor General v. Fisher, 47 N. W. Rep. [Mich.] 574.)' "

In Haecke v. Eastern Sarpy County Drainage Dist., 141 Neb. 628, 4 N. W. 2d 744, the first syllabus is as follows: " 'Statutory provisions authorizing assessments of special taxes against property benefited by public improvements are to be strictly construed, and it must affirmatively appear that the taxing authorities have taken all steps which the law makes jurisdictional; the failure of the record to show such proceedings will not

be aided by presumptions.' Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734."

To the same effect is Chicago & N. W. Ry. Co. v. Payne Creek Drainage Dist., 148 Neb. 139, 26 N. W. 2d 607, and Shanahan v. Johnson, 170 Neb. 399, 102 N. W. 2d 858.

The following quotations from Shanahan v. Johnson, *supra,* found at page 412, appear to me to be pertinent: " 'A grant of power to a county is strictly construed and any reasonable doubt of the existence of the power is resolved against the county.' Such opinion was cited with approval as recently as Board of Commissioners v. McNally, 168 Neb. 23, 95 N. W. 2d 153.

"As early as Hurford v. City of Omaha, 4 Neb. 336, citing authorities, this court said: 'That when the particular provision of the statute relates to some immaterial matter, where compliance is a matter of convenience rather than substance, or where the directions of the statute are given with a view to the proper, orderly, and prompt conduct of business merely, the provision may generally be regarded as directory.

" 'When a fair interpretation of the statute, which directs acts or proceedings to be done in a certain way, shows that the legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, *then the statute must be regarded as mandatory.* And under such statutory provisions, the corporation has no election in the matter as to how or when the duties shall be performed, and municipal officers have no option or authority to act differently from the mode particularly prescribed. And if there be manifest irregularity in the proceedings, presumptions are not indulged to sustain such proceedings, or to give new character to that which is seen to be defective, or to supply the place of that which is not apparent.' " (Italics supplied.)

There is an extensive note on the jurisdictional feature of this case in 95 A. L. R. 116, annotating a Florida case. For our purpose, the following quotations from that note give the general rule. The following is found at page 117: "Many statutes and city charters provide that a local improvement shall be undertaken only on a property owners' petition. Under statutes of this sort it is generally held that the presentation of a petition which conforms in all material particulars to the statutory requirements is jurisdictional, and the want of such a petition makes the whole proceeding void."

At page 136 we find the following: "1. Majority rule. It is held generally that the finding of the city authorities or council, that the required number of landowners have petitioned for a local improvement, is not, in the absence of legislative provision to that effect, conclusive."

In our opinion we rely on the following cases: Cacek v. Munson, 160 Neb. 187, 69 N. W. 2d 692; Roberts v. City of Mitchell, 131 Neb. 672, 269 N. W. 515; Hiddleson v. City of Grand Island, 115 Neb. 287, 212 N. W. 619; and Gergen v. The Western Union Life Ins. Co., 149 Neb. 203, 30 N. W. 2d 558.

Cacek v. Munson, *supra,* considered a basically different statute, section 79-402, R. R. S. 1943, which, so far as material here, provides: "The county superintendent shall then advertise and hold a hearing to determine the validity and sufficiency of the petitions. Upon determination, as a result of the hearing, that valid signatures of at least fifty-five per cent of the qualified voters of each district are contained in the respective petitions, the county superintendent shall proceed to effect the changes in the district boundary lines as set forth in the petitions." The statute provides for the publication of the notice of hearing to determine the validity of the petition. The statute also directs that "Upon determination, as a result of the hearing," that the petition is valid, the county superintendent shall act.

Section 17-510, R. R. S. 1943, makes no such provision. It was the absence of this provision from the statute in Morse v. City of Omaha, *supra*, which precluded the action of the city council from being final and conclusive. Incidentally, the construction of section 79-402, R. R. S. 1943, which was originally adopted in 1881, has been consistent. It was first so construed in 1886 in State ex rel. Donavan v. Palmer, 18 Neb. 644, 26 N. W. 469. It was so construed when the opinion in Morse v. City of Omaha, *supra*, was adopted, and it is still so construed. Cacek v. Munson, *supra*, cannot therefore be considered as overruling the Morse case in any particular. Obviously, the judicial characterization was accorded from 1886 to the present day to the findings and determinations of the county superintendent only because they were based on evidence adduced at a hearing held after notice of the hearing had been given.

Roberts v. City of Mitchell, *supra*, involved only the question as to whether an erroneous assessment by a board of equalization was reviewable by an appeal or error proceedings. It did not involve any determination that the finding of an insufficient petition, to be sufficient, was a judicial determination which was conclusive. Consequently, Morse v. City of Omaha, *supra*, was not considered or overruled.

Hiddleson v. City of Grand Island, *supra*, arose under what is now section 16-620, R. R. S. 1943, which is applicable to cities of the first class, and not under section 17-510, R. R. S. 1943. It is, however, for our purposes analogous to section 17-511, R. R. S. 1943. It is apparent that these two sections are intended to serve separate and distinct purposes. In section 17-511, R. R. S. 1943, the council is given authority to create a paving district if it deems it necessary, but is required to publish a notice of such ordinance. A majority of the property owners are then required to file objections within 20 days to the creation of the district. If such objections are not filed, the council is authorized to

proceed. Jurisdiction under section 17-511, R. R. S. 1943, attaches upon the determination of the council of the need for the district. The law gives the council, under this section, the authority to pass upon the sufficiency of the objections.

Under section 17-510, R. R. S. 1943, the jurisdiction and authority of the council to create the paving district is dependent and conditioned upon the actual existence of a petition containing the requisite number of signers. *It is the petition which originates the jurisdiction and authority to create the district.* Section 17-510, R. R. S. 1943, affords no opportunity to be heard in protest or remonstrance after an ordinance has been passed as does section 17-511, R. R. S. 1943, nor does it provide for notice of the intended creation of a paving district so that protest can be made prior to its passage. The case of Morse v. City of Omaha, *supra,* was not involved or considered in Hiddleson v. City of Grand Island, *supra.*

Gergen v. The Western Union Life Ins. Co., *supra,* which was an action to revive a district court judgment, is obviously premised upon the statement: "* * * if a court is one competent to decide." The point involved in the instant case is that the city council does not have jurisdiction to act on a paving petition under section 17-510, R. R. S. 1943, unless 60 percent of the resident owners have signed and filed the petition. I do not believe that we can contend that it was the intention of Gergen v. The Western Union Life Ins. Co., *supra,* to overrule Morse v. City of Omaha, *supra.*

As I view the law applicable to section 17-510, R. R. S. 1943, the petition is jurisdictional. Plaintiff may attack it collaterally. I agree with plaintiff that error proceedings would not be an adequate remedy under section 17-510, R. R. S. 1943.

In my judgment, our opinion is in error, largely due to our failure to consider Morse v. City of Omaha, *supra,* and the distinctions between sections 17-510, 17-511, and 79-402, R. R. S. 1943.