RUDERSDORF DRAINAGE DISTRICT, APPELLEE, V. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 13, 1929. No. 26229.

*Holmes, Chambers & Holland* and *Nickerson & Nickerson,* for appellant.

*Collins & Collins, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

· DEAN, J.

From the assessment of alleged benefits to its property by the Rudersdorf Drainage District, hereinafter called

the district, the Chicago, Rock Island & Pacific Railway Company, hereinafter called the company, appealed to the district court for Sarpy county, wherein the amount of the assessment complained of by the company, namely, $1,500, was reduced to $1,000.

On the part of the company, on appeal to this court, the objections are substantially these:

(a) The district was not organized according to law, nor (b) was a lawful estimate made of the required work. (c) The proposed assessment against the company is in excess of any actual benefits and is therefore void. (d) That by reason of the construction of the proposed ditch through an existing pile trestle bridge of the railroad and the same appropriated by the district for a new waterway, the objector has suffered damages in the sum of $5,000, and is entitled to an offset. (e) That the purported levy is irregular and void because an election was not called by the district on three weeks' notice, as section 1862, Comp. St. 1922, requires for a vote on the adoption of the improvement and proceeding with the work. The estimate of the cost of the project exceeds 20 per cent. of the assessed value of the lands benefited by the improvement, which assessed value, under section 1862, is based upon one-fifth of the actual value.

Counsel for the district make this observation: "Can the appellant declare the assessment void and in the same breath declare it valid by its appeal from the apportionment?" In *Baker v. Morrill Drainage District,* 98 Neb. 791, cited by the district, we held that the appellants, having appeared and having opposed the levy of an assessment, and having made objection to the assessment of benefits against their lands by prosecuting an appeal from such assessment to the district court, waived their right to insist that no apportionment of benefits had in fact been made.

In respect of the merits it may be observed, on the part of the district, that Mr. Gavenman, the district engineer, testified that the drainage district ditch was installed to

carry the heavy rainfall upon an area of approximately a thousand acres of higher ground on the north side of the railroad track in the Platte river valley between Lincoln and Omaha. There is evidence which tends to show that the water formed a creek 15 feet wide and 7 or 8 feet deep on the higher ground, the land on the north side of the track being from one and one-half to five feet higher than on the south side of the track, and where very heavy rain falls, the water, at times, runs over the tracks and, if allowed to follow the old water-course, will stand along the north side of the right of way and by seepage the roadbed will be damaged thereby. The evidence fairly discloses that the district engineer took into consideration a company trestle bridge in making the assessment. He testified: "Q. Did you take into consideration, you and the board, the trestle bridge through which the ditch now passes under the Rock Island? A. I certainly did. I figured it cost the Rock Island something to put that bridge in, and I considered $1,500 on a ditch like the one that is built now, very, very low. * * * Q. You say that you took into consideration the assessed value too. Did you take into consideration the maintenance of the bridges and the right of way, and the relief from damages and injury to the right of way and so forth and the property of the Rock Island, by reason of the floods that came from the Rudersdorf drain? The court: Answer yes or no. A. Yes, sir." The district engineer also testified that he had a conversation with the engineer of the company when the district was being formed and that the company's engineer showed him where he wanted the ditch put in.

The secretary of the district board of directors testified that frequently, after a heavy rainfall, he had seen three feet of water on the north side of the right of way adjacent to the railroad tracks and that the volume of water looked like a small lake. He testified too that, at times, he heard sectionmen working on the tracks during the nighttime to overcome the flood of water and prevent damage to the company's property.

A disinterested witness testified that his land joined that of Mr. Rudersdorf's and that, during the past eight years, he was familiar with the existing conditions and had noticed the effect of the water on the railroad property. From his evidence it appears that, at times, a crew of railroad employees worked at night repairing the right of way from the damaging effects of the excessive rainfalls and that, sometimes, after a very heavy rainfall, no trains passed over the track during the night and part of the next day but were detoured over another route.

Four or five disinterested witnesses testified in respect of the heavy rainfalls and the consequent inundation of the roadbed, and also to the fact that, at some points, the flood-water came up to a foot or a foot and a half of the tracks. And some of these averred that sediment was deposited, by reason of the excessive rainfall, in the immediate vicinity, to such extent that it almost covered the top of the fence posts. From their evidence it appears that, at the time, the roadbed of the company was gradually being submerged.

The division engineer testified that the trestle bridge was constructed by the company at an expense of more than $3,200 to relieve the overflow of the flood-waters. And it may be observed that the right of way is nearly 12 feet high where it crosses the ditch. He also testified that the district engineer asked permission of him to run the ditch through the bridge, but that he had no power to give such permission and that he had never heard from higher authority granting permission. In respect of a culvert in the vicinity in question, owned by the company, this witness testified: "Q. Wasn't it (the culvert) built large enough to carry off the water that flowed there? A. No, sir."

*County of Blaine v. Brewster*, 32 Neb. 264, is cited in *Drainage District v. Chicago, B. & Q. R. Co.*, 96 Neb. 1, and is in point here. In that case it appears that Brewster owned a bridge across the North Loup river. The county commissioners located a public road over the bridge and it was appropriated by the public. The agreed value of the

bridge was $610, but the county board rejected the claim when it was presented. On appeal to the district court the claim was allowed and the judgment was subsequently affirmed in this court in the above cited case, opinion by Maxwell, J.

When it is determined by competent authority that either an individual or a business enterprise, in the present case a common carrier, is the recipient of a substantial benefit from improvements installed by the public, such enterprise should bear a reasonable part of the expenses of the construction. That the right of way of the company is enhanced in value by the construction of the drainage system under discussion is apparent. Only a few of these benefits need be here enumerated, and among these are relief from numerous floods extending up to the ties and rails, and decreasing the hazards of passenger and freight traffic, and lessened expense of maintaining the right of way.

So far as applicable here, we adhere to the rule announced in *Drainage District v. Chicago, B. & Q. R. Co.*, 96 Neb. 1, above cited, wherein we held that the defendant was entitled to set off, against the special benefits which it derived from the entire scheme of drainage, the reasonable value of the portion of such benefits as was caused by the work which it had itself done in producing those benefits.

From the record before us, and in view of the decisions, we conclude that the judgment of the trial court in fixing the amount of the assessment at $1,000 is reasonable and should be sustained. The judgment is therefore

AFFIRMED.