SELF *et al. v.* INDIAN CREEK DRAINAGE DIST. No. 1.

(Division B. May 19, 1930. Suggestion of Error Overruled July 3, 1930.)

[128 So. 339. No. 28648.]

Lowrey & Lamb, of Marks, for appellant.

Boone & Lowrey, of Marks, for appellant.

**Herbert Holmes**, of Senatobia, for appellee.

Argued orally by **Lomax B. Lamb** and **M. P. Lowrey**, for appellant, and by **Herbert Holmes**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Panola county, rendered in July, 1929, approving an assessment of benefits to certain lands beyond the bounds of Indian Creek drainage district No. 1, being lands which the commissioners of the drainage district claim were benefited by improvements already made and completed in the district, the lands so assessed being in and around the town of Darling.

Various questions arising out of the organization and establishment of the Indian Creek drainage district No. 1 have heretofore been before the supreme court for decision. The cases in which those questions arose were Indian Creek Drainage District Number One v. Garrott et al., 123 Miss. 301, 85 So. 312; and Gillis et al. v. Indian Creek Drainage District Number One, 155 Miss. 160, 124 So. 262. Instead of undertaking to give a full history of the organization and establishment of the district and its progress prior to the proceedings out of which the present case arose, reference therefor is made to the facts set out in those two cases. We are enabled to do this because on the trial of the present case the pertinent parts of the records in those two cases were made a part of the record in this case. We deem only the following additional statement of the case necessary in order to develop the questions to be decided: The Indian Creek drainage district, prior to the proceedings in the present case, comprised approximately forty-five thousand acres of land in Tunica, Quitman, and Panola counties. The district was organized in 1916 under chapter 195, Laws of 1912, and amendments thereto. Commissioners of the district were appointed, assessment of benefits made, bonds of the district were authorized to be issued, and were issued and sold. One of the main improvements contemplated was the construction of a levee extending from the northwest corner to the southwest corner of the district along its entire western line. The

purpose of this levee system was to protect the lands included within the bounds of the district from the overflow waters of Coldwater river. The levee was situated from one to seven miles east of Coldwater river, touching the river bank at the northern corner of the district. Later the levee was extended south from three to four miles beyond the district, connecting with the river bank at high land. This litigation resulted from that extension. The commissioners of the district claimed that certain lands outside of the district, in and around the town of Darling, were benefited by that extension of the levee system, and ought to be assessed with the benefits derived therefrom, and brought into the district. Appellant's lands were among those claimed by the commissioner to have been so benefited.

In December, 1929, the commissioners filed an assessment against this territory in and around the town of Darling, specifically describing the lands, and assessing each tract of land with the benefits resulting thereto, by reason of such extension of the levee system beyond the bounds of the district. Notice was given of such assessment of benefits to the landowners, as provided by the statute. Neither the sufficiency of the notice nor the manner of giving it is in question. Appellants protested against the assessment as to their lands. There was a hearing before the chancery court on evidence pro and con, resulting in a decree confirming the assessment and including the lands in the district.

The three principal grounds upon which appellants argue that the decree appealed from should be reversed are as follows: First, that the chancery court had no authority, under the law, to consider and decide at one hearing the question whether the lands involved should be included in the district, and also the question of the assessment of benefits to such lands; second, that the law did not authorize the use of the proceeds of such assessments to maintain improvements in the district already made; third, that the extension by the drainage

commissioners of the levee beyond the bounds of the district was unauthorized by law, and therefore appellants' lands lying beyond the district cannot be assessed with benefits, the proceeds of which are to be used for maintenance of improvements already made in the district.

We will consider and decide these questions in the order stated.

Section 7 of chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, section 4961, Hemingway's Code of 1927, provides, among other things:

"If the commissioners, at any time either before or after the organization of the district, find that other land, not embraced within the boundaries of the district, will be benefited by the proposed improvement or improvements *already made,* they shall assess the estimated benefit to such lands, and shall specially report to the board of supervisors the assessments which they have made on lands beyond the boundaries of the district, as already established. It shall thereupon be the duty of the clerk of the board of supervisors to give notice by two weekly insertions in a newspaper published in the county where such lands lie, describing the additional lands which have been assessed; and the owner of real property so assessed shall be allowed not less than ten days after the last publication of such notice in which to file with the clerk of the board of supervisors, their protest against being *so assessed, or included within the district.* The board of supervisors shall, at its next succeeding session after the time for filing of such protest shall have expired, investigate the question whether the lands beyond the boundaries of the district so assessed by the commissioners will in fact be benefited by the making of the improvement, and from its finding in that regard, either the property owner or the commission of the district may, within twenty (20) days appeal to the chancery court or the chancellor in vacation; if the finding is in favor of the commissioners, the limits of the

district shall be extended so as to embrace any lands that may be benefited by the making of the improvement." (Italics ours.)

Section 15 of the act as amended, section 4975, Hemingway's Code of 1927, provides, among other things, that the drainage commissioners are authorized to borrow money with which to pay for the improvements of the district, and to maintain the same, and to issue and sell bonds therefor, which bonds are to be paid by revenues derived from the benefits to the lands assessed and collected.

Section 21 of the act, section 4983 of Hemingway's Code of 1927, provides as follows:

"In case it is necessary to do so in order to obtain a proper outlet for the drainage system, the commissioners may construct ditches or do other work beyond the border of their district, so as to carry the water to some proper outlet, or otherwise to secure the object of the improvement. In that event, they shall have the right to condemn a right of way for such drain, or other construction, and the proceedings thereof shall be the same that are now provided by law. Such a ditch or drain beyond the limits of the district shall be the property of the district, and no person not assessed shall have the right to dig any lateral drain connecting therewith without the consent of the commissioners; provided, however, that if such property owner cannot agree with the commissioners as to the price to be paid for the privilege of connecting with such ditch, the board of supervisors of the county where such connection is sought to be made shall fix the amount of such compensation, and either shall have the right to appeal from its findings to the circuit court."

Section 22 of the act as amended, section 4984 of Hemingway's Code of 1927, is in the following language:

"The drainage district shall not cease to exist upon the completion of its drainage system, but shall continue to exist as a body corporate, for the purpose of preserving the system of drainage and keeping the ditches clear

from obstruction and of extending, widening or deepening the ditches, from time to time, and for doing such other things and acts in order to carry out the purposes of this act and of the drainage system so established, as may be found advantageous to the district. For these purposes, the board of commissioners may borrow money and issue its bonds in such sums and in the manner provided under section 15 of this act, and may, from time to time, apply to the board of supervisors for the levying of *additional* assessments upon the benefits for the payment of said work or said bonds. Upon the filing of such application or petition with the clerk of the board of supervisors, he shall give notice by publication by two insertions in a newspaper published in each of the counties in which the district embraces land and any property owner seeking to resist such additional levy may appear at the next term of the board of supervisors not less than ten days after the last insertion of said notice and urge his objections to such levy and in case he fails to appear, such levy shall stand with the force of a final judgment, but either the property owners or the commissioners may appeal from the finding of the board, to the chancery court, or to the chancellor in vacation; or if from the finding of the chancery court or chancellor, to the supreme court not later than twenty days after the date of such levy.'' (Italics ours.)

It will be observed that section 7 of the act as amended provides that either before or *after* the organization of the district, if the commissioners find that lands not embraced within the boundaries of the district are benefited by the proposed improvement, or improvements *already made,* they shall assess the benefits to such lands, and report such assessments, etc., and give notice to the landowners in the manner provided by that section; and there shall be a hearing and a determination by the chancery court as to whether such assessments shall be approved; and, if the assessments are approved, the statute provides that ''the limits of the district shall be ex-

tended so as to embrace any lands that may be benefited by the making of the improvement.'' Appellants contend that the statute contemplates two notices and hearings, one to determine whether the lands outside of the district shall be incorporated within the district, and the other whether the assessment of benefits resulting from the improvements already made shall be approved. We are of opinion that appellant's position in that respect is not well founded. The statute expressly provides that, if the lands outside of the district are benefited by the improvements made, they shall be included within the district. On the hearing the court decides, not two questions, but one question, and that is, whether the outside lands are benefited and the extent of the benefits; and the decision of that question determines whether they shall be incorporated in the district.

The question whether the funds derived from the assessment of benefits to the added territory can be used to maintain improvements already made in the district, we think, is answered in the affirmative by section 15 of the act as amended. The benefits assessed against the lands of the district as originally formed, as well as the benefits assessed against the added lands, are to be used ''for the purpose of constructing and maintaining the ditches and other improvements, provided for under this act, and for carrying out the purposes and provisions of this act, and for paying for the work incident thereto.'' In other words, funds derived from the assessment of the added territory are in the same category as funds derived from the assessment against the lands of the original district. The commissioners are authorized by the statutes to use such funds not only to construct, but to maintain, the improvements already made, or to be made.

Appellant contends that there is nothing in the record in this case showing that levee No. 1 on the east side of Coldwater river was extended beyond the district in the manner provided by section 21 of the Drainage Act. This

extension constitutes the improvement which the drainage commissioners contended, and the chancery court decided, resulted in the benefits to appellants' lands, with which such lands were assessed. Appellants' position is that, the record being silent as to whether the law was followed by the drainage commissioners in making this extension, such extension will be treated as having been illegally made; and, since it was illegally made, the benefits resulting therefrom to appellants' lands cannot be assessed and the lands brought into the district.

We are of opinion that this question cannot now be raised by appellants. It is an attack by appellants on the legality of the improvements made by the commissioners of the district as originally formed, and it is a collateral, not a direct attack. The questions as to the legality of the organization of the original district, and the assessment of benefits to the lands therein, and the improvements made by the commissioners, were all finally determined in the original proceedings before any attempt was made to embrace appellants' lands within the district. The judgments and orders of the court made in those proceedings concluded all these questions, both as to the landowners in the district and as to those outside of the district. Certainly as to the latter any attack on those proceedings is purely a collateral attack.

We do not think there is sufficient merit in the other questions argued to call for a discussion by the court.

Affirmed.