MID-CONTINENT AIRLINES, INC., APPELLANT, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.

48 N. W. 2d 81

Filed June 1, 1951. No. 32951.

*Hotz & Hotz* and *William F. Dalton,* for appellant.

*Clarence S. Beck,* Attorney General, and *William T. Gleeson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

On September 30, 1950, the State Board of Equalization and Assessment adopted an average state levy pursuant to section 77-629, R. R. S. 1943, and directed that the assessed value, rate of levy, and tax of Mid-Continent Airlines, Inc., be certified to the State Tax Commissioner and State Treasurer pursuant to sections 77-630 and 77-1005, R. R. S. 1943, and that Mid-Continent Airlines, Inc., be notified of the assessment, rate of levy, and tax due.

Mid-Continent Airlines, Inc., will be hereinafter referred to as Mid-Continent; the State Board of Equalization and Assessment, as the board; and the State Tax Commissioner, as the commissioner.

Mid-Continent undertakes to appeal here under authority of section 77-510, R. R. S. 1943, and "possibly" section 77-617, R. R. S. 1943, and rule 1 (c) of the revised rules of this court. We dismiss the appeal.

The statutory provisions with reference to the taxation of Mid-Continent, here involved, are sections 77-1244 to 77-1250, R. R. S. 1943. On forms provided by the commissioner, Mid-Continent furnished information for

the purpose of enabling the commissioner to determine the value of Mid-Continent's flight equipment and the proportion allocated to this state for purposes of taxation. The commissioner called for additional information which Mid-Continent furnished.

On August 21, 1950, the commissioner advised Mid-Continent as to his finding of the taxable value of its flight equipment in Nebraska and of the formula used in determining it.

Under date of September 21, 1950, Mid-Continent expressed doubt as to the method used in arriving at the flight equipment value under the statute, challenged the use of certain elements in arriving at the value, and asked for a reconsideration of the assessment. In the event that was denied, Mid-Continent asked that the whole matter be referred to the board for its review pursuant to section 77-303, R. R. S. 1943, and that it be given an opportunity to be heard before the board.

The commissioner advised Mid-Continent to the effect that it considered the assessment basis correct, questioned the applicability of section 77-303, R. R. S. 1943, advised that the board would be glad to hear Mid-Continent when it met for the purpose of formally adopting the levy, and fixed the date.

On September 26, 1950, Mid-Continent advised the commissioner that it wished to appear before the board "* * * for the purpose of expressing our objection to the assessment method used in arriving at flight equipment values."

Up to this point the matter appears to have been handled by correspondence supplemented by personal contacts.

On September 30, 1950, the board met and took under consideration the assessed valuations of Mid-Continent as submitted by the commissioner. Mid-Continent presented a prepared statement "in an effort to seek a review and an adjustment of the flight equipment values" as determined by the commissioner for the levy of the

1950 flight equipment tax. It contended that the assessed value was in excess of the actual value and that the method used in arriving at the assessed value was improper. It then made a detailed statement in support of its position. It submitted statements showing the cost to it of certain of its aircraft.

The board then took the action hereinbefore set out and Mid-Continent was advised as to the valuation, rate of levy, and amount of tax. Mid-Continent then gave notice of its intention to appeal in accord with section 77-510, R. R. S. 1943.

Mid-Continent here challenges the validity of sections 77-1244 to 77-1250, R. R. S. 1943, and the validity of the decision of the board and the commissioner on state and federal constitutional grounds and, in the event those contentions are not sustained, also challenges the correctness of the valuations found, and asks for trial de novo here.

We are first confronted with the contention of the board that section 77-510, R. R. S. 1943, does not provide an appeal under the circumstances here.

So far as material here, section 77-510, R. R. S. 1943, provides: "From any final decision of the State Board of Equalization and Assessment with respect to the valuation of any real or personal property, any person, county or municipality affected thereby may prosecute an appeal to the Supreme Court."

In 1921, the Legislature enacted chapter 133, "An Act relating to public revenue * * *." Laws 1921, c. 133, p. 545. Section 4 of Article XI, page 591, related to the duties of the State Board of Equalization and Assessment. That section provided, among other things, that "From any final decision of the State Board of Equalization and Assessment, any person, county or municipality affected thereby may prosecute a writ of error to the Supreme Court * * *."

This section became section 5901, Comp. St. 1922. The language last above quoted was before us in Elmen v.

State Board of Equalization and Assessment, 120 Neb. 141, 231 N. W. 772. We there held that section 5901, Comp. St. 1922, was wholly devoted to the subject of the equalization of assessments and procedure prescribed therefor, including provisions for review of the final determinations therein made, and that the specific language last above quoted must be limited to proceedings contemplated and regulated by section 5901, Comp. St. 1922.

This section became section 77-1004, Comp. St. 1929. It was amended in 1933. Laws 1933, c. 129, p. 504. The title provided that it was an act to provide that the State Board of Equalization and Assessment shall equalize the valuation of both real and personal property between counties. The words "real" and "personal property" were inserted in several places in the section. The particular language here involved was amended to read "From any final decision of the state board of equalization and assessment with respect to the valuation of any real or personal property, any person, county or municipality affected thereby may prosecute a writ of error to the supreme court * * *."

In the 1943 revision this section was divided into and became sections 77-505 to 77-510, R. S. 1943. There were a number of editorial changes made in the act which are not important here.

The rule is: "In codifying or revising statutes, a mere rearrangement of the sections or parts of a statute, or the placing of portions of what was originally a single section in separate sections, does not change the purpose, operation and effect thereof." Gembler v. City of Seward, 136 Neb. 196, 285 N. W. 542, on rehearing, 136 Neb. 916, 288 N. W. 545.

The provision for "a writ of error" in the language hereinbefore considered was amended to "an appeal." However, we find nothing in the amendments to indicate a legislative intent to change the construction placed on the appeal provision in the Elmen case.

It is patent that Mid-Continent was not seeking to secure an equalization of assessment before the board, but rather sought there to secure a reduction of its assessment based on alleged errors in the method of computation and elements entering into value. See Scotts Bluff County v. State Board of Equalization and Assessment, 143 Neb. 837, 11 N. W. 2d 453.

"The right of appeal is purely statutory. Unless the statute provides for appeal in the specific instance under examination at any time, such right does not exist." Roberts v. City of Mitchell, 131 Neb. 672, 269 N. W. 515.

Obviously section 77-617, R. R. S. 1943, is not involved here. That section relates to appeals in matters relating to the assessment of railroad property under different and separate statutory provisions.

It necessarily follows that the procedure which Mid-Continent has here followed and the remedy sought here are without authority of law and that the appeal must be dismissed.

APPEAL DISMISSED.