FRANK H. PRUCKA ET AL., APPELLEES, v. EASTERN SARPY DRAINAGE DISTRICT, APPELLANT.

59 N. W. 2d 761

Filed July 3, 1953. No. 33230.

*William R. Patrick* and *Smith & Smith,* for appellant.

*Tesar & Tesar* and *Burbridge & Burbridge,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE,. YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Frank H. Prucka and Margaret Prucka, hereinafter called plaintiffs, filed a complaint with the county clerk. as provided by section 31-413, R. R. S. 1943, objecting to any determination of units of benefits and assess- ments that might be levied against them on their de- scribed lands by Eastern Sarpy Drainage District, here- inafter called defendant. Insofar as important here,. their objections were in substance: (1) That the dis- trict was not lawfully organized or existent as a drain- age district under Chapter 31, article 5, Compiled Stat- utes of Nebraska, 1929, then applicable thereto, and thus had no authority to determine any units of benefit. or levy any assesments against their lands; (2) that the pretended action taken by the district's board of di- rectors was null and void for want of any authority to act, because they had failed to give proper bond and take proper oath as required by statute; and (3) that. said board failed to give jurisdictional notice to the landowners of a hearing upon reapportionment of bene- fits as required by section 31-449, R. R. S. 1943.

An order of the trial court was entered consolidating seven other cases, specifically reciting the docket num- bers thereof, for trial with the case named in the title of this opinion, and providing that all rulings and orders made in this case were to have equal force and effect in all of such cases. That order is not questioned, and this opinion disposes of all such cases.

After hearing, whereat voluminous evidence was ad- duced, the trial court rendered its decree, the effect of which was to sustain plaintiffs' objections aforesaid; conclude that the district had no legal existence as a drainage district; that its officers were neither de facto nor de jure officers; and that the attempt of the district to make determination of units of benefits, reapportion

same, and levy assessments therefor, was without jurisdiction, null and void. Such decree was rendered and ordered entered in each and every one of the consolidated cases with like force and effect.

Defendant's motion for new trial was overruled, and it appealed, assigning substantially that the trial court erred: (1) In permitting plaintiffs to file a supplemental transcript in the district court to include therein the report of reapportionment of benefits; (2) in allowing legal existence of the district to be litigated as an issue; (3) in depriving the district of substantial rights by concluding that it was not a legally existing district and had no jurisdiction to determine units of benefit or levy assessments; and (4) in concluding that the action of directors of the district in attempting to do so was null and void because they failed to give proper bond and take proper oath as provided by statute. We sustain the above third and fourth assignments, but conclude that assignments one and two have no merit. In that connection, however, defendant conceded that the district failed to give proper notice to landowners of hearing upon reapportionment of benefits as required by section 31-449, R. R. S. 1943, and that the trial court was correct in concluding that the purported reapportionment was null and void for that jurisdictional reason. Therefore, we affirm the judgment as modified herein.

Section 31-413, R. R. S. 1943, provides: "Any person claiming to be aggrieved by such apportionment of the benefits may file complaint thereof with the county clerk within twenty days after the third publication of the notice provided for by section 31-412, together with a bond running to the district, with surety or sureties to be approved by the county clerk, conditioned to pay all costs that may be adjudged against such complainant, if the appeal be not sustained. Thereupon the county clerk shall make a transcript of the objections and of the report of apportionment of benefits, and such appellant

shall, within ten days thereafter, file such transcript in the district court of the county, and such court shall hear and determine all such objections in a summary manner as in a case in equity, and shall increase or reduce the units of benefits on any tract where the same may be required in order to make the apportionment equitable. All objections that may be filed shall be heard and determined by the court as one proceeding, and only one transcript of the report of the apportionments shall be required." In that connection, as provided in section 31-449, R. R. S. 1943, when a reapportionment of benefits is attempted, "appeals may be taken therefrom as provided in the original apportionment."

Plaintiffs complied with such provisions, and filed their complaint with the county clerk, whereupon, at plaintiffs' request, the clerk prepared a transcript, and plaintiffs duly filed same in the district court. However, it was subsequently discovered that the county clerk had failed to include "the report of the reapportionment of benefits" in the transcript, and defendant filed objections to jurisdiction upon that ground. Plaintiffs thereafter made a proper showing that the omission was entirely due to the fault, mistake, and acts of the county clerk, whose duty it was to make the transcript "of the objections and of the report of apportionment of benefits," whereupon the trial court overruled defendant's objections and sustained plaintiffs' motion for permisison to have diminution of the record and file a supplemental transcript. That was done. Defendant's first assignment relates to such action.

In In re Estate of House, 144 Neb. 870, 15 N. W. 2d 56, this court held: "Where, as here, a duty is placed upon a public officer to perform acts necessary to per-to the litigant nor operate to defeat the appeal. In re Estate of Tagart, 119 Neb. 647, 230 N. W. 492." See, also, Dobesh v. Associated Asphalt Contractors, 137 Neb. 342, 289 N. W. 369; Schuyler v. Hanna, 28 Neb. 601, fect an appeal, his failure to perform cannot be charged

44 N. W. 731, 11 L. R. A. 321. In that connection, Chicago, B. & Q. R. R. Co. v. Platte Valley Drainage Dist., 113 Neb. 49, 201 N. W. 648, is directly in point and controls a conclusion that defendant's contentions with regard to the transcript have no merit. By analogy, from the afore-cited cases, the applicable rule is that where a transcript of objections to the apportionment of benefits is filed within the statutory time under the provisions of section 31-413, R. R. S. 1943, the district court acquires jurisdiction even though the report of apportionment of benefits is not contained therein due to the mistake and act of the county clerk.

We turn then to defendant's second assignment to determine whether or not legality of the existence of the district or legal status of its officers could properly be litigated in the light of plaintiffs' objections. In that connection, we conclude that whether or not there was a legally existing district could be litigated in the light of plaintiffs' objections, but since we conclude that defendant was a de jure district, the status of its officers could not be so collaterally attacked.

The general rule is: "In accordance with general rules fully noticed elsewhere in this work, the courts are fully agreed that nonjurisdictional irregularities and defects in the formation of a drainage, sewerage, or reclamation district can be challenged only in a direct proceeding to test the validity of its organization, and cannot even be considered in a collateral suit. But if the proceedings were in fact void, their nullity may be shown in any character of action." 17 Am. Jur., Drains and Sewers, § 24, p. 793.

In Township of Lake v. Millar, 257 Mich. 135, 241 N. W. 237, it is said: "The rule is that errors and irregularities in drain proceedings must be taken advantage of by certiorari, but an entire want of jurisdiction may be taken advantage of at any time." See, also, Cordes v. Board of Supervisors, 197 Iowa 136, 196 N. W. 997, wherein legal existence of a district was raised for the

first time on appeal, but the court said: "Under the authority cited, we think the question was one that could properly be raised for the first time on appeal; * * *."

In Lightner v. Greene County, 145 Iowa 95, 123 N. W. 749, the landowner appeared before the district's board and filed objections to the proposed assessment, which were overruled. He then appealed to the district court and there moved to cancel the assessments, among other reasons because there never had been any legal establishment of the district and the board who made the assessment was thus never legally selected, and their return was void. In that opinion it is said: "From the record it is apparent that the trial court was of opinion that the board of supervisors had no jurisdiction of the proceedings and lacked power to make any assessment whatever. Being of that mind it concluded that the district court was also without jurisdiction and it therefore, in effect, dismissed the proceedings as having been void ab initio, and canceled and set aside the assessments. Now while the proceedings are somewhat unusual in that the statute provides for the filing of objections before the board, appeal to the district court, and a trial there as in equity * * * yet if the board of supervisors, for any reason, never acquired any jurisdiction or right to act at all in the premises, and this clearly appears from the record, doubtless the court might, on motion, at any time during the course of or even before the trial, dismiss the entire proceedings and cancel the assessment; but before such summary proceedings can be sustained it must appear that the board was without jurisdiction to act at all in the premises."

Drainage Dist. No. 1 v. Village of Hershey, 139 Neb. 205, 296 N. W. 879, was a suit by a district to collect taxes assessed by it upon lands which were not lawfully subject to assessment. The defense was that they were void for want of any authority or jurisdiction to levy the assessments. No appeal had been taken from the assessment. This court, assuming that the action of the

district's board was in the nature of an adjudication by an administrative body, affirmed the district court which had concluded that the judgment of such board was void and subject to collateral attack. In the opinion it is said: "The action of the plaintiff's board of supervisors in making the assessments in the instant case resulted in a judgment void on its face, and it requires only an inspection of the record to demonstrate such fact. Its status is that of a mere nullity and, in legal effect, no judgment at all, conferring no right and affording no jurisdiction. 1 Freeman, Judgments (5th ed.) 642, sec. 322. * * * The determination of a board of supervisors of a drainage district, levying or confirming a drainage assessment, is subject to collateral attack, where such assessment is absolutely void, as for fraud or demonstrable mistake of fact. See 19 C. J. 745." See, also, Campbell v. Youngson, 80 Neb. 322, 114 N. W. 415.

In State ex rel. Sheffer v. Fuller, 83 Neb. 784, 120 N. W. 495, no notice was given of change of boundaries of the district as required by law, and action of the directors was void for want of any jurisdiction to make the same. In the opinion it is said: "We are of opinion that landowners have a right to rely upon the district being formed, if created at all, in conformity with said notice, and, if the commissioners change those boundaries so that the notice does not truly describe them, any landowner who did not have knowledge of the change or participate in that election may, by timely appeal to the courts, successfully challenge the legal existence of said district. City of Atlanta v. Gabbett, 93 Ga. 266; Payson v. People, 175 Ill. 267."

O'Neill v. Leamer, 93 Neb. 786, 142 N. W. 112, affirmed in 239 U. S. 244, 36 S. Ct. 54, 60 L. Ed. 249, was a suit to enjoin the supervisors of a drainage district from proceeding further with construction of a ditch across plaintiff's land. In that opinion it is said: "The plaintiffs contend that the drainage district was not regularly organized, and seem to insist that the proceedings were

so defective that the court was without jurisdiction, and the district is not even a de facto corporation. The objections suggested, however, relate to supposed defects in serving of notice on some of the parties interested in the formation of the district, and other similar matters, none of which is of sufficient importance to affect the jurisdiction of the court or subject its judgment to this collateral attack. * * * Errors, if any, not affecting the jurisdiction of the court should have been corrected in that court or upon appeal."

In Scottsbluff Drainage Dist. v. Scotts Bluff County, 113 Neb. 187, 202 N. W. 455, the district apportioned units of benefit to certain county highways. The county made no objection thereto, and took no appeal therefrom. Assessments made were unpaid by the county and the district filed a claim therefor which was disallowed. Upon appeal therefrom to the district court, a judgment was rendered in favor of the district. Upon appeal to this court, we affirmed that judgment, holding: "If timely objection is not made, even serious irregularities which do not affect the jurisdiction of the board cannot be made matter of effectual defense after apportionment and assessment duly made." In the opinion it is said: "The errors which we are considering are irregularities not affecting jurisdiction. This view finds support in White v. Papillion Drainage District, 96 Neb. 241."

Haecke v. Eastern Sarpy County Drainage Dist., 141 Neb. 628, 4 N. W. 2d 744, cited and discussed the last two cases aforesaid. Such case was an appeal from an apportionment of benefits. In the opinion it is said: "The proper organization of the district under the provisions of chapter 31, art. 5, Comp. St. 1929, is not questioned." Nevertheless, the apportionment was held by this court to be void for failure of the district to precedently make " 'detailed plans of the public work to be done' " in an appropriate manner as required by section 31-511, Comp. St. 1929. In that connection, we held: "The question of compliance with this condition

precedent and the sufficiency of plans adopted for that purpose may be presented to the district court on appeal from an order of apportionment of benefits." In other words, we concluded that such step was a jurisdictional requirement which could be presented to the district court on appeal from an order of apportionment of benefits. As logically, the legal existence of the district, a jurisdictional requirement, could also be litigated.

Chicago & N. W. Ry. Co. v. Payne Creek Drainage Dist., 148 Neb. 139, 26 N. W. 2d 607, supports that conclusion. It was an injunction suit challenging jurisdiction of the district to levy units of benefits or to otherwise proceed, for the reason that there were jurisdictional defects in procedure for organization of the district. Plaintiff had not appealed from any proceeding with reference to organization of the district. The trial court sustained a demurrer to plaintiff's petition, denied temporary injunction, and dismissed the action. We affirmed, holding and applying the rule that: "Where a bona fide attempt has been made to organize a drainage district, the legality of its organization cannot be collaterally attacked for irregularities and defects not affecting the jurisdiction of the tribunal by which it was created." In the opinion it is said: " 'Drainage proceedings may be collaterally attacked where they are not merely irregular, but are void for jurisdictional defects, * * *.' 28 C. J. S., Drains, § 36, p. 335.

"Defects on the face of the record showing want of jurisdiction are ground for collateral attack. See 19 C. J., Drains, § 45, p. 635, note 70 (b); Donner v. Highway Comrs., 278 Ill. 189, 115 N. E. 831.

"Appellant cites Haecke v. Eastern Sarpy County Drainage District, 141 Neb. 628, 4 N. W. 2d 744: ' "Statutory provisions authorizing assessments of special taxes against property benefited by public improvements are to be strictly construed, and it must affirmatively appear that the taxing authorities have taken all steps which the law makes jurisdictional; the failure of the

record to show such proceedings will not be aided by presumptions." Morse v. City of Omaha, 67 Neb. 426, 93 N. W. 734.' "

In 19 C. J., Drains, § 258, p. 742, it is said: "Only those objections made before the board or other tribunal, except those going to the jurisdiction of such tribunal, may be considered on appeal. * * * The court may, on appeal, reduce the amount of an assessment when it is inequitable and excessive, or it may set it aside for fraud, gross error, or apparent mistake, or for want of jurisdiction of the board making the apportionment."

Likewise, in 28 C. J. S., Drains, § 36, p. 333, it is said: "The legality of the organization of a drainage district ordinarily cannot be collaterally attacked, except for defects which show that it has no de facto existence or the organization is void for want of jurisdiction." As stated at page 334: "However, the rule prohibiting col-lateral attack does not preclude one from asserting that the district has no de facto existence, as that it was organized under a void statute; nor does such rule preclude one from asserting that the proceedings were void for want of jurisdiction." As stated at page 335: "Drainage proceedings may be collaterally attacked where they are not merely irregular, but are void for jurisdictional defects, such as want of proper notice, and if there is an entire want of jurisdiction it may be taken advantage of at any time."

The aforesaid citations sustain our conclusion that the legal existence of the district may be litigated in proceedings such as are here involved. In that connection, Baker v. Morrill Drainage Dist., 98 Neb. 791, 154 N. W. 533, is distinguishable because no objection was made therein that the district had no legal existence. Such case involved only alleged irregularities as distinguished from jurisdictional defects. In Rudersdorf Drainage Dist. v. Chicago, R. I. & P. Ry. Co., 118 Neb. 43, 223 N. W. 639, objection was made, among others, that: "The district was not organized according to law, * * *."

Therein, citing Baker v. Morrill Drainage Dist., *supra,* as authority, which was not in point or controlling, it was concluded, among other things, that the landowner, having made objection to the assessment of benefits and having appeared and opposed the levy of assessments by prosecuting an appeal from such assessment to the district court, waived the right to declare the assessment void. In such respect, and insofar as such opinion is in conflict herewith, it is overruled as erroneous.

The question then is whether or not the district was legally organized or had a de facto existence. We conclude that it was legally organized as a de jure district, and that its board of directors were at least de facto officers whose authority to act, as here, affecting the public interest and third persons, was not subject to collateral attack.

In that connection, it was stipulated at the trial that "the Eastern Sarpy Drainage District is a drainage district organized by landowners pursuant to petition filed with the County Clerk of Sarpy County, Nebraska, as provided by the statutes of the State of Nebraska in full force and effect." However, it is claimed by plaintiffs that such stipulation has other implications, so we discuss the issues upon their merits as presented· to this court.

The district was organized in 1939, and has generally functioned as such ever since. Concededly the applicable statutes existent at the time of its organization will be found in Chapter 31, article 5, Comp. St. 1929. Section 31-501, Comp. St. 1929, insofar as important here, provided that: "Whenever it will be conducive to the public health, convenience or welfare, * * * a drainage district may be formed and may proceed as hereinafter provided, * * *." In that connection, section 31-502, Comp. St. 1929, provided for the filing of a petition by landowners with the county clerk praying for the formation of such district. No complaint was made herein with regard

to sufficiency of defendant's petition.

Section 31-503, Comp. St. 1929, provided: "At the time. of filing the petition the petitioners shall also file a bond with surety or sureties to be approved by the county clerk which bond shall run to the said county and be conditioned to pay all expenses of the county by reason of such proceedings in case the district be not formed." Plaintiffs argued that the furnishing of such bond was a jurisdictional requirement and that the bond was invalid because it was not in proper form, was signed only by a petitioner as surety, and was never approved by the county clerk. The condition of the bond, running to the county, made a part of and tendered with defendant's petition, signed by 18 landowners, was that petitioners would "pay all expenses of the county by reason of such proceedings in case the district be not formed," which are the identical words used in the statute. Therefore, the bond was in proper form. Contrary to plaintiffs' contention also, the bond was in fact signed by the 18 petitioners and a surety, who was also a petitioner. It was also witnessed.

As stated in O'Brien v. Schneider, 88 Neb. 479, 129 N. W. 1002, appeal dismissed in 229 U. S. 629, 33 S. Ct. 774, 57 L. Ed. 1358: "The statute does not require the petitioners to sign the bond, but to file a bond. A document is filed with an officer when it is placed in his custody and deposited by him in the place where his official records and papers are usually kept. * * * Neither does the statute provide that the surety shall be other than a petitioner. Unless the petitioners sign the bond, they are not liable for costs, and there is no good reason why the clerk should not accept a solvent petitioner as surety on the undertaking."

Across the face of the bond appears the written and signed approval of the bond and surety thereon by all three county commissioners. On the back of it appear the. words: "Filed Oct 16 1939 Besse Deter County. Clerk." True, her written approval does not appear on

the bond, but the statute does not require it. As stated in 43 Am. Jur., Public Officers, § 405, p. 180: "An acceptance or approval of an official bond should be made in the manner prescribed by statute. In any case, of course, it may be in writing, but unless the statute requires a writing, it may be verbal, for no formal acceptance or approval seems necessary. As a practical matter, when delivered to the representative of the government it becomes a binding obligation, unless disapproved by him. Then, too, an implication of approval and acceptance may arise from the facts and circumstances, as where the officer or official body charged with the duty of approving and accepting it retains it without objection for a longer time than the statute requires."

In Seng v. Payne, 87 Neb. 812, 128 N. W. 625, this court said: "A bond conditioned that the makers thereof would 'pay all cost that may occur in case the bord (board) of commissioners find against such improvement,' signed by two of the petitioners, was produced by the county clerk as part of the files of his office in the matter of the location of the ditch. It appears that the bond was filed, but beyond this fact there is no record that the undertaking was approved. We are of opinion, however, that at this late day, in view of the action of the board in locating and constructing the ditch, the bond should be held to have been approved by the board, and that, although the board could have demanded sureties not petitioners for the ditch, yet they were not compelled to do so, and the bond under the circumstances of this case should be held sufficient." See, also, Cortelyou v. Maben, 40 Neb. 512, 59 N. W. 94; Less Land Co. v. Fender, 119 Ark. 20, 173 S. W. 407.

The applicable rule is that when an officer whose duty it is to approve a bond accepts the same for filing, places thereon his filing stamp, and records it in his office, it is presumed, in the absence of competent evidence to the contrary, that such officer performed his

duty and approved the bond. There is no merit in plaintiffs' contention that defendant did not furnish a proper bond as required by statute.

There is no contention that the county board did not comply in every material respect with section 31-504, Comp. St. 1929. In that connection, State ex rel. Harris v. Hanson, 80 Neb. 724, 115 N. W. 294, held that: "The establishment of the boundaries of a proposed drainage district is prima facie evidence that the county commissioners proceded regularly in the establishment thereof and that all conditions precedent have been complied with."

Section 31-505, Comp. St. 1929, insofar as important here, provided: "Thereupon the county clerk shall publish one notice once each week for three weeks in a newspaper published in the proposed district, * * * which notice shall state the filing of the petition; that it is filed under the provisions of this article, giving full title thereof in full; the boundaries of the proposed district as fixed by the county board; that an election will be held at a certain place in the proposed district, which place shall be named in said notice between the hours of 8 o'clock a. m. and 6 o'clock p. m. on a day named therein; that at said election the question of the formation of the proposed district shall be determined; and a board of directors elected, giving the number of such board, such board to take office contingently on the formation of the district."

The provisions of Chapter 31, article 5, Comp. St. 1929, were originally adopted as Chapter 153, Laws of Nebraska, 1907, p. 474, where the full title of the act appears. Section 5 thereof provided in part: "* * * which notice shall state the filing of *said petition;* that it is filed under the provisions of *this law,* giving the title hereof in full; * * *." (Italics supplied.) Since that time, by amendments or revision simply for the purpose of uniformity and clarity, such language has been changed to read, *"the petition"* and *"this article"* which

in legal effect never changed the meaning thereof.

In this case the county clerk concededly published the notice respectively on November 23, November 30, and December 7, 1939, in the Papillion Times, a legal weekly newspaper of general circulation in Sarpy County. Such notice read in part: "LEGAL NOTICE Notice is hereby given that a petition for the formation of a drainage district under the name of Eastern Sarpy Drainage District has been filed with the county clerk of Sarpy County, Nebraska, pursuant to the provisions of an act to provide for * * *." Thereafter the title of such act was recited in full, except for a few words which were an unnecessary duplication therein. Thereafter appeared the following: "* * * adopted by the Nebraska Legislature in 1907. That the board of commissioners of said county, in the manner required by law, have determined and fixed the boundary line of said proposed district as follows: * * *." Thereafter, such boundary line was minutely specified, defined, and recited, after which it was said: "* * * and have ordered that said district, if formed, shall have a board of five directors, who shall give bond in the sum of $1000 each.

"An election to determine whether such district shall be formed, and for the election of a board of five directors, to serve if said district is formed, will be held at the Fort Crook School House in School District No. 40 of said county, between the hours of eight o'clock a. m. and six o'clock p. m. on Saturday, the 9th day of December, 1939, such board of directors to take office contingently upon the formation of said district. Besse Deter, County Clerk."

Plaintiffs argued that the notice was invalid because it used the words "provisions of an act * * * adopted by the Nebraska Legislature in 1907" and did not specifically point out or use the words "Article 5" of the Compiled Statutes of 1929, in order that people in the district would know by what method the district was being organized. In that regard, the very language of the

notice itself gave notice that the district was being organized by vote of the landowners, and at such election there were 2,618 votes cast in favor of forming the district and 1,461 votes against doing so. Such contention has no merit. As stated in State ex rel. Sheffer v. Fuller, *supra*: "The statute does not direct that actual notice shall be given the landowners of the limits of the proposed district, but that notice shall be published once each week for three weeks in a newspaper published at the county seat of every county wherein any of the land of the proposed district is situated. The notice must contain the title to the act and a description of the boundaries of the proposed district as fixed by the county commissioners." The notice here involved did just that and more. In that respect it was not invalid, but met the requirements of the statute.

It was next argued by plaintiffs that the notice was invalid because not published for the period of time prescribed by section 31-505, Comp. St. 1929. In that connection, they rely upon section 25-2227, R. R. S. 1943, contending that 21 full days should have elapsed between the first publication and the election. It will be noted that the 1929 statute reads: "Thereupon the county clerk shall publish one notice once each week for three weeks" which is not a requirement of publication "for three weeks." The distinctions between such provisions will be found in State ex rel. Harris v. Hanson, *supra*, and Bancroft Drainage District v. Chicago, St. P., M. & O. Ry. Co., 102 Neb. 455, 167 N. W. 731. Recently, in Johnson v. Richards, 155 Neb. 552, 52 N. W. 2d 737, this court disposed of plaintiffs' argument by holding: "The requirement of publication of a notice in a newspaper three weeks successively is complied with by publication on one day of each of three weeks, that is, three successive weekly publications.

"In such an instance the notice is complete upon the distribution of the last issue of the paper containing the notice though three full weeks did not elapse after the

first publication." We conclude that the notice was properly published as required by statute.

The record discloses that five directors were duly elected at the election held in response to such notice, and each and all of them subsequently gave proper bonds which were approved by the county clerk and filed and recorded in her office, as required by section 31-505, Comp. St. 1929. Their oath of office was attached to and made a part of each director's bond.

We conclude that the district was and is a de jure public corporation which through its officers has been functioning as such. Also, concededly, its directors are to be considered as public officers vested with the power of carrying on the business of the district as prescribed by statute and charged with the responsibility of providing for and securing the lawful exercise of such powers and the protection of public and private interests. White v. Papillion Drainage Dist., 96 Neb. 241, 147 N. W. 218; Drainage Dist. No. 1 v. Suburban Irrigation Dist., 139 Neb. 333, 297 N. W. 645. In such respect, section 31-410, R. R. S. 1943, relating to directors' bonds, provides: "When so filed such person so elected shall take and hold office until his successor is elected and qualified."

Further, as said in State ex rel. Harris v. Hanson, *supra*, reaffirmed in 80 Neb. 738, 117 N. W. 412: "The organization under the act and the operation of the district once established will, as we have attempted to show, subserve public interests, and the property taken and taxes imposed by reason thereof will not be a violation of the constitution." In such opinion it was held: "The phrase, 'with a view to promoting the interests of said drainage district,' used in said act relative to the duties of the county commissioners in establishing the said district, means the public interest, and not the private advantage to be gained by any property owner." See, also, § 31-501, Comp. St. 1929.

In McCollough v. County of Douglas, 150 Neb. 389, 34

N. W. 2d 654, this court held: "An 'officer de jure' is one who is in all respects legally appointed and qualified to exercise the office; one who is clothed with full legal right and title to the office, in other words, one who has been legally elected or appointed to an office, and who has qualified himself to exercise the duties thereof according to the mode prescribed by law.

"A person is a de facto officer where the duties of the office are exercised (1) without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; (2) under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; (3) under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; (4) under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such.

"The de facto officer doctrine does not rest upon a vindication of the right of one to occupy a position or to perform official acts but upon the principle of protection to the interests of the public and third parties." In so holding, we relied upon and cited with approval 43 Am. Jur., Public Officers, § 471, p. 225, and § 470, p. 224 thereof. In the latter section it is said: "The law validates the acts of de facto officers as to the public and third persons on the ground that, although not officers de jure, they are, in virtue of the particular circumstances, officers in fact whose acts public policy requires should be considered valid."

In Freeman v. City of Neligh, 155 Neb. 651, 53 N. W.

2d 67, this court said: " 'The acts of a de facto officer are valid and binding, so far as the interests of the public or third persons are involved.' Magneau v. City of Fremont, 30 Neb. 843, 47 N. W. 280, 27 Am. S. R. 436, 9 L. R. A. 786. See, also, State v. Gray, 23 Neb. 365, 36 N. W. 577.

"As stated in 62 C. J. S., Municipal Corporations, § 493, p. 934: 'Offices are created for the benefit of the public, * * *. For the good order and peace of society their authority is to be respected and obeyed, until in some regular mode prescribed by law their title is investigated and determined. The de jure existence of corporate offices and officers may be determined only in a direct proceeding * * * and the title or right of a de facto officer to the office may not be collaterally attacked. * * * The acts of officers de facto with respect to public matters affecting the public interests are to be regarded as valid and binding; as much so as if the same acts had been performed in the same manner by an officer de jure, and the legality of such acts may not be collaterally attacked.' " See, also, 43 Am. Jur., Public Officers, § 495, p. 241, where it is said: "The general rule is that the acts of a de facto officer are valid as to third persons and the public until his title to office is adjudged insufficient, and such officer's authority may not be collaterally attacked or inquired into by third persons affected. The practical effect of the rule is that there is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned. The principle is placed on the high ground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice."

In 43 Am. Jur., Public Officers, § 483, p. 234, it is said: "A person may also be a de facto officer when the only defect in his title is due to his failure to perform some step required to perfect his legal title to the office, such as taking an oath, giving of a proper bond, or the like.

Although the rule appears otherwise in some states under statutes to the effect that an office shall be vacant upon failure to qualify within a given time, such enactments have usually, it seems, been construed as not preventing a person from being a de facto officer." See, also, 43 Am. Jur., Public Officers, § 484, p. 235, where it is said: "The rule has been generally stated that where an officer under color of right or title continues in the exercise of the functions and duties of the office without legal authority after his term of office has expired, or after his authority to act has ceased, he is an officer de facto."

In the light of such applicable rules, we conclude that the directors of the district serving at the time here involved were at least de facto if not de jure officers, and that their authority to act as such could not be collaterally attacked in the respects here attempted. Whether or not, as a matter of fact, any of them failed and neglected to give proper bond and take proper oath as found by the trial court would not be controlling under the circumstances, and we are not required to discuss such issues at length in this opinion.

For reasons heretofore stated, we decide that the trial court erred in concluding that there was no legally existing district and that its directors had no authority to act either as de facto or de jure officers. However, the decree was concededly correct in adjudging that the reapportionment was null and void for want of notice, as required by section 31-449, R. R. S. 1943.

Therefore, the judgment of the trial court should be and hereby is affirmed as modified herein. All costs are taxed to plaintiffs.

AFFIRMED AS MODIFIED.

SIMMONS, C. J., dissenting.

I dissent from that part of the court's opinion which holds that the legal existence of the district and the legal status of its officers can be litigated in this proceeding.

It is to be remembered that this is an appeal in a special statutory proceeding under section 31-413, R. R. S. 1943. The question is not: Can the question of the legality of the organization of a drainage district be challenged collaterally? That, however, is the question which the court poses and answers. The court quotes the statute and thereafter pays no further attention to it. It being a statutory matter it is my thought that we should examine the statute to determine what jurisdiction the district court has been given *in this proceeding.* That is the question which this appeal presents.

An analysis of Chapter 31, article 4, Reissue Revised Statutes of Nebraska, 1943, answers the question here presented.

The first sections of the article deal with the organization of a district. Section 31-411, R. R. S. 1943, provides for the apportionment of benefits. Section 31-412, R. R. S. 1943, provides for a hearing on objections before the directors of the district, a determination by them of apportionment, a filing of their report, and a publication of notice of the action taken. Section 31-413, R. R. S. 1943, then provides that a person "claiming to be aggrieved by such apportionment of the benefits may file complaint thereof." The county clerk is then to make "a transcript of the objections and of the report of the apportionment of benefits." That transcript is to be filed in the district court of the county where "all such objections" are to be heard and determined by the court "in a summary manner as in a case in equity, and shall increase or reduce the units of benefits on any tract where the same may be required in order to make the apportionment equitable." Section 31-414, R. R. S. 1943, provides that the procedure of sections 31-411 to 31-413, R. R. S. 1943, shall apply if a change of plans or enlargement or extension of the work makes a different apportionment necessary. Section 31-449, R. R. S. 1943, provides for a reapportionment where a levy is invalid. It is quite apparent that these procedures

go to the general matter of apportionment and reapportionment of benefits. The proceedings of section 31-413, R. R. S. 1943, are somewhat akin to an equalization proceeding. At no point in the sections mentioned is there any suggestion of a right or power to go beyond the particular scope of these proceedings and to convert them into an action to test either the legality of the district or the legal status of its officers. This procedure is not designed to accomplish that purpose.

As a general rule, where a statutory remedy is prescribed for a particular purpose, it cannot be used for other purposes. 1 C. J. S., Actions, § 5, p. 973; 1 C. J., Actions, § 100, p. 988.

The statute, section 31-413, R. R. S. 1943, limits the scope of the proceedings and the remedy to be had in the district court. It provides for no pleadings, process, or proceedings as in an ordinary action. It provides for a "complaint" by one "aggrieved by such apportionment of benefits." It provides for a "transcript of the objections" to be filed in the district court. It provides that the district court "shall hear and determine all *such* objections in a *summary manner* as in a case in equity." It provides that the district court "shall increase or reduce the *units of benefit* on any tract where the same may be required in order to make the apportionment equitable." (Emphasis supplied.)

Obviously the "such objections" relates back to the claim that a party is aggrieved by the apportionment of benefits, and limits the scope of the proceedings to objections dealing with that question.

The statute prescribes the order which the court may enter in clear and unmistakable language.

The words "summary manner," as commonly employed in statutes, mean a short, concise, and immediate proceeding to determine issues within the narrow scope of the statutory remedy. Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524; McKown v. Powers, 86 Maine 291, 29 A. 1079; Matlon v. Matlon,

92 Ind. App. 350, 175 N. E. 369; Goodwin v. Calumet Supply Co., 107 Ind. App. 487, 23 N. E. 2d 602.

We have held: "The board of equalization is simply what its name imports, a board for the equalization of values in certain cases. It possesses no powers save those conferred by statute, and its jurisdiction must appear on the face of the record of its proceedings." State ex rel. Goff v. Dodge County, 20 Neb. 595, 31 N. W. 117. See, also, Brown v. Douglas County, 98 Neb. 299, 152 N. W. 545. "Upon the appeal of a landowner from the findings and order of assessment made by the drainage board, the question of the amount of benefits to his land can always be tried, * * *." Drainage Dist. v. Bowker, 89 Neb. 230, 131 N. W. 208. "It will be observed that section 5901, Comp. St. 1922, is wholly devoted to the subject of the equalization of assessments and procedure prescribed therefor, including provisions for review of the final determinations therein made. It would seem, in view of all the provisions referred to, that the concluding portion of section 5901, Comp. St. 1922, must be limited to proceedings contemplated and regulated by this section." Elmen v. State Board of Equalization & Assessment, 120 Neb. 141, 231 N. W. 772.

Nebraska Telephone Co. v. Hall County, 75 Neb. 405, 106 N. W. 471, involved an appeal from the county equalization board to the district court. In the district court the taxpayer undertook to raise a new issue to the effect that it had erroneously reported its property and asked to raise that objection. The statute provided: "The court shall hear the appeal as in equity and without a jury, and determine anew all questions raised before the board which relate to the liability of the property to assessment, or the amount thereof, * * *." Comp. St. 1905, c. 77, art. I, § 124; p. 1311; Ann. St. 1903, § 10523. We held that the issues in the district court under that statute were limited to those questions raised before the board of equalization.

In Reimers v. Merrick County, 82 Neb. 639, 118 N.

W. 113, which was an appeal from a decision of the board of equalization, the taxpayer undertook to raise in the district court the question of constitutionality of the act. We held, citing the Telephone case, that: "Whenever the legislature provides for an appeal to a court from a decision of a board of equalization, that court, no matter what may be its grade, is one of limited jurisdiction for said purpose, and must keep strictly within the letter of the statute defining its power. * * * The legislature, in the section of the revenue law referred to, has seen fit to restrict the district court on such appeal to a consideration of the questions raised before said board, and the court is without power to adjudicate any other issue in that proceeding."

In Bute v. Hamilton County, 113 Neb. 230, 202 N. W. 616, there was an effort to raise questions here not presented to the board of equalization. We followed these two cases and held that that could not be done. See, also, Mid-Continent Airlines, Inc. v. State Board, 154 Neb. 371, 48 N. W. 2d 81; In re Turrell, 63 Misc. Rep. 502, 117 N. Y. S. 764; Self v. Indian Creek Drainage Dist., 158 Miss. 7, 128 So. 339.

Consistent with these decisions I would hold that in the proceedings provided by section 31-413, R. R. S. 1943, a party claiming to be aggrieved by an apportionment of benefits by a drainage district cannot properly challenge the legality of the organization of the district nor the legal status of its officers.

The court ignores the above decisions of this court which point directly to the correct answer here and quotes from cases and texts dealing with collateral attack generally.

Township of Lake v. Millar, 257 Mich. 135, 241 N. W. 237, was an action in equity for an injunction; Drainage Dist. No. 1 v. Village of Hershey, 139 Neb. 205, 296 N. W. 879, was a suit for judgment upon taxes assessed; State ex rel. Sheffer v. Fuller, 83 Neb. 784, 120 N. W. 495, was an action in quo warranto to dissolve a district

and oust its acting directors; O'Neill v. Leamer, 93 Neb. 786, 142 N. W. 112, affirmed in 239 U. S. 244, 36 S. Ct. 54, 60 L. Ed. 249, was an action to enjoin the construction of a ditch; Campbell v. Youngson, 80 Neb. 322, 114 N. W. 415, was an injunction action; Scottsbluff Drainage Dist. v. Scotts Bluff County, 113 Neb. 187, 202 N. W. 455, was a proceeding on a claim for assessments not paid; and Chicago & N. W. Ry. Co. v. Payne Creek Drainage Dist., 148 Neb. 139, 26 N. W. 2d 607, was an injunction action challenging the organization of the district.

Those cases do not deal with the construction or jurisdiction of a court in a special statutory proceeding.

The court quotes from certain of the standard texts. The first one is from 17 Am. Jur., Drains and Sewers, § 24, p. 793. The quote is correct. It is interesting to note, however, that the text cites no authority for the last sentence, which the court adopts in its syllabus point. Also, it should be noted that the court does not quote the next sentence which is: "The fact that the organizing tribunal acted without jurisdiction or that the proceedings were conducted under an unconstitutional statute may be brought up in a suit to recover an assessment or to enjoin a levy and may constitute a good defense or a good cause of action therein." Obviously the actions there mentioned do not deal with one such as we have here.

The court quotes from 19 C. J., Drains, § 258, p. 742. It fails to quote a prior sentence in the same section which is: "The questions to be determined on appeal from a drainage assessment are generally confined to those bearing on the making and correctness of the assessment, and the regularity of the prior proceedings cannot be reviewed." In this connection, see, also, 28 C. J. S., Drains, § 72, p. 441; 48 Am. Jur., Special or Local Assessments, § 184, p. 718.

The court quotes from 28 C. J. S., Drains, § 36, p. 333. The court does not quote this sentence appearing

in the text: "The legality of the organization of the district cannot be questioned by a landowner in assessment proceedings, * * *." The court quotes from a subparagraph entitled "Jurisdictional defects" appearing in the above text on page 335. The court fails to quote the next following sentence which is: "In case of jurisdictional defects, the party entitled to complain may sue to set aside or enjoin the collection of assessments, or to enjoin the construction of the drain, except where there is a plain and adequate remedy at law."

The above counterquotes are given to illustrate the inherent dangers and weaknesses involved in following statements in texts, as is here done, particularly in matters of statutory construction.

It appears to me that such statements of law taken from such decisions and applicable to the nature of the action being tried and statements from texts are not particularly persuasive or in point in determining the issues that may be tried under a special statutory proceeding such as we have here.

I have not overlooked the fact that the court quotes part of one sentence from Cordes v. Board of Supervisors, 197 Iowa 136, 196 N. W. 997, which in turn rests upon Lightner v. Greene County, 145 Iowa 95, 123 N. W. 749, from which an extended quote is made. The court, however, fails to note that the Iowa statute cited in the opinion is not analyzed or discussed. The statute provides: "The appeal herein provided for shall be tried in the district court as an action in equity * * *." § 1989-a14, Code of Iowa, Supp. 1907. The broad language of the Iowa code when compared with the restricted language of our statutes, hereinbefore quoted, removes the Iowa cases as persuasive authorities.

The court, by adopting general language from cases and texts, has effectively judicially amended our act, struck out the limiting clauses, and converted this special proceeding to "an action in equity."

Particular reference should be made to the court's use

as an authority of Haecke v. Eastern Sarpy County Drainage Dist., 141 Neb. 628, 4 N. W. 2d 744. We there held that compliance with the provision of section 31-511, Comp. St. 1929, as to the making of detailed plans of public work to be done, was a condition precedent to the apportionment of benefits and that the question of compliance with this condition precedent could be presented to the district court on an appeal from an order of apportionment of benefits.

The court now holds that we concluded that such a step was a jurisdictional requirement and "As logically, the legal existence of the district, a jurisdictional requirement, could also be litigated." I assume that it may be said that the legal existence of the district is a condition precedent to any subsequent act of the district including the apportionment of benefits, but from that it does not follow that in this special statutory proceeding that question can be raised.

The court overlooks the fact that this proceeding, by the very terms of the statute, deals with the equitable apportionment of benefits and nothing else. The Legislature presupposed the existence of a legally organized district, with legally qualified officers with power to act. It provided for a review of action taken by such a district and such officers. The court overlooks the fact that detailed plans were in fact, and made so by statute as demonstrated by the opinion, a condition precedent to the apportionment of benefits. That is a foundation element necessary to establish the correctness of the apportionment of benefits. The legal organization of the district is not such a foundation element. If it is, then proof of the legal organization of the district and the legal status of the officers becomes "a condition precedent" to proof of the correctness of the apportionment of benefits in all cases. I find no indication in the statute of such a requirement and the court cites none.

I would hold that the issue to be determined in this

proceeding is that which the Legislature said was to be determined. I would leave the question of the legality of the district and the legal status of its officers to be determined by the remedies which the law clearly furnishes for that purpose.